WARNER, C.J.
This is a complex case involving allegations of fraudulent transfers. The trial judge resolved many of the issues of summary judgment. Because we find that material issues of fact remain, we reverse.
A short version of the facts are as follows. Frederick Asseo was involved with Jet Sea France and Jet Sea U.S.A., which were in the business of constructing and managing large yachts. The yachts were owned and financed through tax syndicates established in France based upon a tax incentive program implemented by the French Government. According to Stardust’s complaint against Asseo and others, just prior to Jet Sea France declaring bankruptcy in March 1993, Asseo transferred a substantial number of Jet Sea France’s assets to himself. In the bankruptcy proceeding, the trustee decided to sell the assets of the company. The trustee obtained information on the assets’ nature, character, and quality from Asseo and his partner, which information Stardust alleged was false. In reliance upon this information, Stardust offered to purchase and ultimately acquired Jet Sea France’s assets, including the goodwill of the company, and expected that it could restructure the tax syndicates on the various yachts so as to generate profitable contracts for itself.
Instead, Stardust discovered that Asseo and his partner had transferred control of many of the yachts to other corporations so that Stardust lost the revenue stream from Jet Sea France’s customer base. Stardust alleged that it had lost the profits of managing the yachts which Asseo had appropriated. Further, it claimed that As-seo was infringing on the use of the “Jet Sea” trade name after its transfer to Stardust in May 1993. The complaint also asserted RICO violations and fraudulent misrepresentations. The complaint was filed in 1994.
Asseo ultimately was sanctioned and defaulted in the suit. A final judgment of over $100,000,000 was entered against him. As part of supplementary proceedings to collect the judgment, Stardust filed suit against Ming Properties, Inc. (“Ming”), which had acquired Asseo’s Fort Lauder-dale home in August of 1994. Ming claimed, among other matters, that since Asseo and his wife held the home as tenants by the entirety prior to its purchase by Ming, and no judgment was entered against Asseo’s wife, the home was not an asset which could be reached in execution proceedings. Stardust then filed suit against Severine Asseo, the wife, claiming that the acquisition of the home was fraudulent as to creditors and thus could be reached in proceedings pursuant to the Uniform Fraudulent Transfer Act, Chapter 726, Florida Statutes (1993). Stardust obtained a default judgment against Seve-rine, which Ming appealed to this court. We dismissed the appeal, finding that although Ming could not appeal on behalf of Severine, the default would not be binding on it as to the factual issues in further proceedings.
Much earlier in the case, Ming had filed a motion for summary judgment on the ground that the property could not be Chapter 726 property because it was held as a tenancy by the entirety when Ming purchased it. Stardust opposed the motion, arguing that the property had originally been purchased with fraudulently acquired funds. The trial court denied the motion, finding that material facts remained. Subsequently, Ming again moved for summary judgment, and Stardust filed its own motion for summary judgment, claiming that because of the default against Severine, Ming could not contest the allegations that the property was fraudulently acquired and was subject to Chapter 726 proceedings. The trial court denied Ming’s motion but made findings of fact based upon the default against Seve-rine. The following were among those factual findings: the property was an asset pursuant to Chapter 726 on the date of the transfer of the Florida home from Asseo and his wife to Ming; the property was *556 subject to process by a creditor; and the transfer of the property from Federic As-seo and his wife to Ming was a fraudulent transfer. Thus, the court’s determinations were based upon the default and not on any undisputed proof that the property was originally purchased with fraudulently obtained funds.
The record, however, does reveal how the Florida property was obtained. In 1992, prior to the Jet Sea bankruptcy and Stardust’s involvement with Jet Sea, the Asseos entered into two purchase contracts, one for the home and one for an adjoining lot. The Florida property was obtained partially by exchanging the equity in- their previously owned Sea Island property, acquired in the beginning of 1992, and partially with a mortgage to Ocean Bank for the difference. Only a small amount of cash was contributed to the purchase of the adjoining lot, which was also financed. Each was titled in the names of both Asseos, as husband and wife. Stardust does not assert in its argument that the property was not held as tenants by the entirety. Instead, it claims that because the property was purchased with fraudulently obtained funds, it can be reached under Chapter 726. Unfortunately, that fact was never litigated, because the trial court determined the issue on summary judgment based upon a default of the wife in the supplementary proceedings. This was error because we had previously determined in our dismissal order of Ming’s appeal that the default against Severine “did not operate against [Ming] as an admission of the allegations covered by the default.” See State Farm Mut. Auto. Ins. Co. v. Clark, 544 So.2d 1141, 1142 (Fla. 4th DCA 1989); Dade County v. Lambert, 334 So.2d 844, 847 (Fla. 3d DCA 1976). Since Ming was not given the opportunity to litigate this issue, the entry of summary judgment was reversible error.
Stardust alternatively claims that Ming did not present any evidence to counter Stardust’s assertion that the Jet Sea transaction was a source of the funds used to acquire the entireties property. First, we disagree that it was Ming’s initial burden to prove the negative, i.e., that no funds from Jet Sea were used. Because the property was held in a tenancy by the entirety when it was sold to Ming, it was not an asset within the meaning of section 726.102(2), Florida Statutes (1993), which excludes from the term “asset” interest in property held in tenancy by the entireties. Section 726.102(2)(c) contains a qualification that such property is excluded “to the extent it is not subject to process by a creditor holding a claim against only one tenant.” That qualification would permit a creditor, such as Stardust, to prove that the entireties property was obtained with fraudulently acquired funds. Cf. Ohio Butterine Co. v. Hargrave, 79 Fla. 458, 84 So. 376, 378 (1920). However, the statute does not put the burden on Ming to prove that the property was not obtained by fraudulent funds. As there are sufficient documents in the record to show that this is a disputed issue of fact, we reverse as to this issue also.
With respect to Ming’s acquisition of the Florida property, Ming also took the position that it was a good faith purchaser for reasonably equivalent value. See § 726.109(1), Fla. Stat. (1993). In determining whether Ming paid reasonably equivalent value, the trial court excluded the value of the mortgage Ming assumed when it purchased the Florida property. This was error. Ming refinanced the mortgage and thus relieved the Asseos from their burden of debt. Section 726.104(1) states that “[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied....” (emphasis added). Ming assumed and satisfied the Asseo’s debt. This assumption and satisfaction must be considered as valuable consideration, pursuant to the statute.
 In addition, Ming conveyed property in Winter Park, Colorado, as part of *557 the purchase of the Florida property. On summary judgment, the trial court concluded that the transfer of the Colorado property to an entity controlled by the Asseos did not constitute consideration. There were material disputed issues of fact on this issue, and it should not have been resolved on summary judgment. Moreover, the issue as to the value of the Colorado property was not resolved because the trial court determined that As-seo had no ownership interest in that property at the time of the transfer, as it had instead been transferred to an entity controlled by Asseo. Finally, the court granted summary judgment on the issue of As-seo’s insolvency at the time of the transfer. Issues of fact remained, particularly as to the proper valuation of Stardust’s contingent claim at the time of the transfer. The claim consisted mainly of lost potential profits, which were disputed through affidavits. We reverse on these issues also.
In sum, much of this case was determined by summary judgment on which there were multiple material issues of disputed fact. For that reason, we reverse and remand for a trial on these issues.
GUNTHER and STEVENSON, JJ., concur.