780 So.2d 45 (2001)
BEAL BANK, SSB, Petitioner,
v.
ALMAND AND ASSOCIATES, etc., et al., Respondents.
No. SC93384.
Supreme Court of Florida.
March 1, 2001.
*48 Raymond Ehrlich, Scott D. Makar and Alan M. Weiss of Holland & Knight LLP, Jacksonville, FL, for Petitioner.
William G. Cooper and Tracy K. Arthur of Cooper, Ridge & Beale, P.A., Jacksonville, FL, for Respondents.
PARIENTE, J.
We have for review the decision of the Fifth District Court of Appeal in Beal Bank, SSB v. Almand & Associates, 710 So.2d 608 (Fla. 5th DCA 1998), certifying two questions as ones of great public importance.[1] We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. The certified questions arise from the central issue in this case: whether bank accounts titled in the name of both spouses were held as tenancies by the entireties and, therefore, not subject to execution by a creditor of only one of the spouses. We rephrase the certified questions as follows to more closely reflect our analysis in this case:
I. In an action by the creditor of one spouse seeking to garnish a joint bank account titled in the name of both spouses, if the unities required to establish ownership as a tenancy by the entireties exist, should a presumption arise that shifts the burden to the creditor to prove that the subject account was not held as a tenancy by the entireties?

*49 II. In an action by the creditor of one spouse seeking to garnish a bank account jointly titled in the name of both spouses, if the unities required to establish ownership as a tenancy by the entireties exist, but the signature card expressly states that the account is owned as a joint tenancy with right of survivorship, does that statement alone constitute an express disclaimer that the account is not held as a tenancy by the entireties?
III. In an action by the creditor of one spouse seeking to garnish a bank account jointly titled in the name of both spouses, if the unities required to establish ownership as a tenancy by the entireties exist, but the signature card expressly disclaims the tenancy by the entireties form of ownership, may the debtor resort to extrinsic evidence to prove that a tenancy by the entireties was intended if the debtor establishes that the financial institution did not offer a tenancy by the entireties form of account ownership?
For the reasons discussed in this opinion, we answer questions one and three in the affirmative and question two in the negative.

I. FACTUAL BACKGROUND
Petitioner Beal Bank obtained judgments against respondents, Amos F. Almand, Jr. (Almand, Jr.), and his son, Amos F. Almand, III (Almand, III), based on obligations that arose in connection with the Almands' businesses. Among other attempts to collect on these judgments, Beal Bank, as creditor, sought to garnish several bank accounts held by the Almands and their wives. It is undisputed that the Almands' wives were neither parties to the judgments nor personally liable for the obligations. The subject bank accounts that we discuss were held in three banks:[2] multiple accounts in Compass Bank, one account in SouthTrust Bank, and one account in Barnett Bank.
With regard to the accounts held in Compass Bank that the Almands jointly owned, the signature cards[3] list the account owners as follows: (1) "Amos F. Almand III, Sue C. Almand"; (2) "Amos F. Almand or Sue C. Almand"; (3) "Almand, Doris W. or Almand, Amos"; and (4) "Amos F. Almand, Jr. and Doris J. Almand."[4] None of these signature cards specify a particular form of joint ownership such as "tenants in common," "joint tenancy with right of survivorship," or "tenancy by the entireties."
As for the account held in SouthTrust Bank, the signature card signed by Almand, Jr. lists the "account legal title" as owned by "Amos F. Almand, Jr. or Doris J. Almand, JT TEN." According to the signature card, the depositors own the account "as joint tenants with right of survivorship, *50 unless another manner of ownership is specifically set forth in connection with the account legal title on this card."
The signature card for the Barnett Bank account specifies that the account is owned by "Amos F. Almand Jr. or Doris J. Almand Jt. Tenants with Rights of Survivorship." According to the signature card, persons signing the card "acknowledge(s) receipt of and agree(s) to the Rules and Regulations of the Bank for the account... not limited to ... Barnett Bank's Welcome Brochure." The multi-page Welcome Brochure provides that it "contains the rules and regulations governing" the Barnett Bank account. Paragraph 16 of the Welcome Brochure is entitled "Ownership of Account and Transfer of Ownership," and states:
16. Ownership of Account and Transfer of Ownership: If the account is designated a JOINT account, or if the names of two or more owners are joined by the word "or" or "and" on the signature card or in the title of the account, the Customer agrees that all sums now or hereafter deposited in the account are and shall be joint property owned by the Customer and any co-owners of the account as joint tenants with the right of survivorship and not as tenants in common or as tenants by the entireties.... Even if the Bank at the Customer's request titles the Customer's account as "Tenants by the Entireties" or receives oral or written notice that the Customer intends to treat the funds as being held as such, the Customer agrees that as between the Customer and the Bank, the Bank may treat the account like any other joint account and subject to all the terms and provisions set forth above.
After the trial court issued writs of garnishment against the Compass Bank, SouthTrust Bank, and Barnett Bank accounts, the Almands and their wives filed motions to dissolve the writs,[5] and the court held an evidentiary hearing on the motions. At the hearing, both father and son testified regarding their intent in opening the joint accounts held with their wives.
According to the son, Almand III, he and his wife Sue C. Almand had been married for over twenty-one years at the time of the hearing. Almand III testified that he and his wife were joint owners of the accounts, which belonged to them both as a whole, with each of them possessing the accounts equally. Either one could write checks on the account, as they both had "equal access" to it. Almand III stated that his intent in opening the accounts was:
[T]o open this account where the monies would belong to the two of us and that either party could sign for any or all of the monies. I still don't think I have a clear enough understanding of the difference between joint tenants, tenants with rights of survivorship, tenants without, or tenants by the entireties, to really know what I was asking for in legal terms, you know, but my intent was to have the monies belong to both parties and have equal access to that money.
The father, Almand, Jr., also testified regarding the accounts he held with his wife. At the time of the hearing, he and his wife Doris Almand had been married *51 for almost 52 years. Almand, Jr. testified that none of the monies in any of the accounts had been derived from property owned solely in his name, at least during the two years preceding the hearing. He also testified that he and his wife opened each of the accounts with the intent that "everything that we put into the bank was ours;" that he and his wife both controlled their money; that they were both entitled to the funds; that they owned the property "together;" and that they both had the same interest in the funds. In addition, Almand, Jr. testified that they used the funds to pay marital expenses, but he admitted that when they opened the accounts, he had never heard of a "tenancy by the entirety account." After the evidentiary hearing, the trial court entered an order dissolving the writs of garnishment directed to all of these accounts.

II. THE FIFTH DISTRICT'S OPINION
In a split decision, the Fifth District reversed the trial court as to some accounts, but affirmed the trial court as to the remainder of the accounts and certified the questions for our review. See Beal Bank, 710 So.2d at 608, 617-18. The decision includes a short per curiam majority opinion. See id. at 608. In addition, Judges Cobb and Harris both wrote opinions concurring in part and dissenting in part, and Judge Sharp concurred in result only with a separate opinion.
With regard to the accounts at issue here, the per curiam majority opinion held that the Compass Bank accounts were not subject to execution, but that the Barnett Bank and SouthTrust Bank accounts held in the names of Almand III and his wife were subject to execution. See id. The majority opinion did not explain the basis for this result, so we must derive the rationale from the separate opinions of the individual judges.
According to Judge Cobb's concurring in part, dissenting in part opinion, the Almands had not demonstrated that they held any of the bank accounts as tenancies by the entireties or that the accounts were exempt from the creditors of one of the spouses. See id. at 611. In addition to the wording of the actual bank documents, Judge Cobb focused on the husbands' testimony that in each marriage either spouse, acting alone and without the knowledge of the other, could withdraw the funds in any accounts for any purpose. Id. Judge Cobb further deemed it important that the Almands testified that they themselves did not know the legal significance of a tenancy by the entireties account at the time they created the accounts. See Beal Bank, 710 So.2d at 611. Based on the Almands' testimony and their wives' failure to testify, Judge Cobb reasoned that "there was no evidence, much less clear and convincing evidence, that the various accounts were created with the intent of the parties that they were to be held as tenancies by the entireties." Id.
In contrast, Judge Harris concluded that the Almands held all of the accounts at issue as tenancies by the entireties and, therefore, the trial court's findings as to these accounts should have been affirmed. See id. at 617 (Harris, J., concurring in part and dissenting in part). In making this determination, Judge Harris found that "regardless of the depositors' relationship with the bank, as between third parties, the question remains as to whether the depositors intended that each own all of the account." Id. at 616 n. 2. In Judge Harris's opinion, the Almands satisfied their burden of proof by their testimony. See id. at 616-17. Judge Harris concluded that a party need not have a clear understanding of the legal definition of a tenancy by the entireties in order to benefit from that form of ownership. See Beal Bank, 710 So.2d at 616-17. Moreover, Judge Harris opined that even without the testimony from the wives, the husbands' testimony established "the intent that each spouse owns the entire account and not a divisible portion thereof," which was sufficient to establish their intent to form a tenancy by the entirety. Id. at 617.
Judge Sharp, in her separate opinion, agreed with Judge Harris that there was *52 sufficient evidence in the record to sustain the trial court's determination that the Almands held the Compass Bank accounts as tenancies by the entireties. See id. at 615 (Sharp, J., concurring in result only). However, Judge Sharp concluded that the Almands did not hold the Barnett Bank and SouthTrust Bank accounts as tenancies by the entireties. See id. In Judge Sharp's view, "because of the express language contained in the account documents," the Barnett Bank and SouthTrust Bank accounts, were "truly joint accounts and not tenancies by the entireties." Id. at 612. Accordingly, she would not have permitted the parties to "resort to extrinsic, parol evidence of intent" to support the creation of a tenancy by the entirety because Judge Sharp reasoned that the account documents for these two accounts clearly stated an intent to form a joint tenancy with right of survivorship. Id. at 614-15.

III. ANALYSIS

A. TENANCIES BY THE ENTIRETIES
To understand the key legal issues in this case, we start with an overview of the different forms of legal ownership of property in the State of Florida. Property held as a tenancy by the entireties possesses six characteristics: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously);[6] (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names). See First Nat'l Bank v. Hector Supply Co., 254 So.2d 777, 781 (Fla.1971), cited in Sitomer v. Orlan, 660 So.2d 1111, 1113 (Fla. 4th DCA 1995); see also In re Estate of Lyons, 90 So.2d 39, 41 (Fla.1955) (citing Andrews v. Andrews, 155 Fla. 654, 21 So.2d 205, 206 (1945)). Because of the sixth characteristicunity of marriagea tenancy by the entireties is a form of ownership unique to married couples.[7]See Quick v. Leatherman, 96 So.2d 136, 138 (Fla.1957), cited in Sitomer, 660 So.2d at 1113.
Although only a married couple is legally entitled to hold property as a *53 tenancy by the entireties, a married couple may also hold property jointly as tenants in common or as joint tenants with right of survivorship. Tenancies in common, joint tenancies, and tenancies by the entireties all share the characteristic of unity of possession; however, tenancies in common do not share the other characteristics or unities. See Andrews, 21 So.2d at 206. Joint tenancies and tenancies by the entireties share the characteristic of survivorship and three additional unities of interest, title, and time. See id. In other words, for both joint tenancies and tenancies by the entireties, the owners' interests in the property must be identical, the interests must have originated in the identical conveyance, and the interests must have commenced simultaneously.
Although a tenancy by the entireties and joint tenancy with right of survivorship share all of the same characteristics of form, there are significant differences in the legal consequences between the forms of ownership when creditors of one spouse seek to garnish these assets, when one spouse declares bankruptcy, or when one spouse attempts to recover monies transferred without his or her permission.[8] When a married couple holds property as a tenancy by the entireties, each spouse is said to hold it "per tout," meaning that each spouse holds the "whole or the entirety, and not a share, moiety, or divisible part." Bailey v. Smith, 89 Fla. 303, 103 So. 833, 834 (1925). Thus, property held by husband and wife as tenants by the entireties belongs to neither spouse individually, but each spouse is seized of the whole. See Hector Supply Co., 254 So.2d at 780; Wilson v. Florida Nat'l Bank & Trust Co., 64 So.2d 309, 313 (Fla. 1953). In a joint tenancy with right of survivorship, each person has only his or her own separate share ("per my"), which share is presumed to be equal for purposes of alienation; whereas, for purposes of survivorship, each joint tenant owns the whole ("per tout"), so that upon death the remainder of the estate passes to the survivor.
Because of this distinction between each spouse owning the whole versus each owning a share, if property is held as a joint tenancy with right of survivorship, a creditor of one of the joint tenants may attach the joint tenant's portion of the property to recover that joint tenant's individual debt. See Sitomer, 660 So.2d at 1114. However, when property is held as a tenancy by the entireties, only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and therefore it cannot be reached to satisfy the obligation of only one spouse. See Winters v. Parks, 91 So.2d 649, 651 (Fla. 1956); Sitomer, 660 So.2d at 1114.
Early this century, this Court adopted the common law rule that a tenancy by the entireties may exist in both real property and personal property. See Bailey, 103 So. at 834. In the years following Bailey, this Court has continued to adhere to its holding that a tenancy by the entireties in *54 personal property constitutes a legally recognized form of ownership. See Hector Supply Co., 254 So.2d at 779-80; Winters, 91 So.2d at 651; In re Estate of Lyons, 90 So.2d at 41-42; Hagerty v. Hagerty, 52 So.2d 432, 434 (Fla.1951).
Despite the fact that this Court has recognized the tenancy by the entireties form of ownership in both real property and personal property, this Court has adopted different standards of proof for each. Where real property is acquired specifically in the name of a husband and wife, it is considered to be a "rule of construction that a tenancy by the entireties is created, although fraud may be proven." Hector Supply Co., 254 So.2d at 780. As explained in Hector Supply Co., when we reaffirmed the vitality of the tenancy by the entireties form of ownership in both real property and personal property:
Though the modern tendency is to regard the creation of an estate by the entireties as resting, not upon a rule of law arising from the supposed incapacity of husband and wife to hold in moities, but upon a rule of construction based on the presumption of intention, it may be laid down as a general proposition that, where land [and also personalty] is conveyed to both husband and wife, they become seized of the estate thus granted per tout et non per my, and not as joint tenants or tenants in common. The estate thus created is, however, essentially a joint tenancy, modified by the common-law doctrine that the husband and wife are one person.
Hector Supply Co., 254 So.2d at 780 (quoting English v. English, 66 Fla. 427, 63 So. 822, 823 (1913)); see Bailey, 103 So. at 834.
In the case of ownership of real property by husband and wife, the ownership in the name of both spouses vests title in them as tenants by the entireties. See Losey v. Losey, 221 So.2d 417, 418 (Fla. 1969).[9] Thus, "[a] conveyance to spouses as husband and wife creates an estate by the entirety in the absence of express language showing a contrary intent." In re Estate of Suggs, 405 So.2d 1360, 1361 (Fla. 5th DCA 1981) (citing Losey v. Losey, 221 So.2d 417 (Fla.1969)); see Espenship v. Carter, 514 So.2d 1108, 1109 (Fla. 1st DCA 1987); Dixon v. Davis, 155 So.2d 189, 191 (Fla. 2d DCA 1963).
Unlike real property titled in the name of both spouses that is presumptively considered to be a tenancy by the entireties as long as the other unities are established, our jurisprudence has treated bank accounts and other personal property differently. In determining whether personal property is held as a tenancy by the entireties, we have applied "a different standard" by requiring that "not only must the form of the estate be consistent with entirety requirements, but the intention of the parties must be proven." Hector Supply Co., 254 So.2d at 780; see also Winters, 91 So.2d at 652; In re Estate of Lyons, 90 So.2d at 42; Hagerty, 52 So.2d at 434; Bailey, 103 So. at 835.[10] In contrast, *55 in real property, intent to hold the property as a tenancy by the entireties is presumed. See Losey, 221 So.2d at 418; Hector Supply Co., 254 So.2d at 780. In Hector Supply Co., we explained our reasoning for having applied a different standard for personal property:
Realty matters are matters of record which occur infrequently, and which generally involve formal transactions necessarily requiring consent of both spouses. Personalty, on the other hand, is generally not under mandate of record; it may easily be passed by either spouse without mutual consent or without knowledge of the other spouse; finally, it may change hands with great frequency, as in the case of the checking account.
Id. at 780 (citing In re Estate of Lyons, 90 So.2d at 42).

B. PROBLEMS ARISING FROM THE DIFFERENT STANDARD
Once this Court determined that personal property could be held as a tenancy by the entireties, but also determined that no presumption of a tenancy by the entireties would arise when a husband and wife acquired and held personal property jointly, there were bound to be difficulties in how to prove the intent to own the personal property as a tenancy by the entireties versus a joint tenancy with right of survivorship. It was for this precise reason that Justice Boyd's concurring in part, dissenting in part opinion in Hector Supply Co. urged the Court to accord the same presumption to the ownership of personal property by husband and wife as was recognized in the case of real property. 254 So.2d at 783. In his opinion:
[A contrary rule requiring proof of intent] creates, in effect, a presumption against the creation of estates by the entireties in personalty. This is contrary to the common experience of men [and women] as we know it and will require litigation in almost every instance, where, as is often true, the parties have not expressly provided in writing for a tenancy by the entireties.
. . . .
... [T]he presumption favoring creation of tenancies by the entireties in personal property ... will generally eliminate the necessity for litigation concerning the intent of the parties.
Id. at 782-83.
In addition to the litigation necessary to establish intent, the problems in proof are compounded by a lack of uniform documentation to assist the inquiry into what form of tenancy the married couple had intended to establish. Neither the law nor "banking practices ... require account holders to expressly delineate the form of ownership they are creating in the jointly held monies." Sitomer, 660 So.2d at 1113. Indeed, over forty years ago, Justice Thornal, writing for this Court in Winters, pointed out that much litigation involving the legal status of bank accounts could be avoided if, when the account is established, banks and depositors "would add language to the signature card stating clearly whether it is or is not intended to create a tenancy by the entirety." 91 So.2d at 652. Beal Bank also acknowledges that much of the confusion in this area could be avoided if banks offered signature cards that include a designation allowing the account holders to affirmatively select tenancy by the entireties accounts. Unfortunately, this suggestion has not been heeded either by financial institutions or through legislative enactment.[11]
*56 A final reason for the difficulty in proving whether personal property is held as a tenancy by the entireties or as a joint tenancy with right of survivorship is that the characteristics and unities of a joint tenancy held by a married couple and a tenancy by the entireties are identical. Although both forms of ownership share identical characteristics when held by a married couple, the types of ownership have legally distinguishable consequences. For example, one legally distinguishable consequence of ownership as a tenancy by the entireties is the inability of one spouse to alienate a portion of the estate without the consent of the other. However, this Court in Hector Supply Co. found that the ability of either spouse to alienate the account individually was not dispositive proof that a tenancy by the entireties did not exist so long as the account "contains a statement of permission for one spouse to act for the other." 254 So.2d at 781. Accordingly, the ability of a spouse to alienate a portion of the account unilaterally would not serve to differentiate these two forms of ownership as long as there is evidence that each spouse had permission to act for the other. See id.

C. SHOULD A PRESUMPTION OF A TENANCY BY THE ENTIRETIES ARISE IN PERSONAL PROPERTY?
As the Almands point out, many financial institutions do not provide married couples with the opportunity to declare their intent to establish a tenancy by the entireties, and some financial institutions even affirmatively attempt to limit the ability of a married couple to establish a tenancy by the entireties.[12] The Almands also assert that most consumers have no training in the complexities of property law, but simply may have the reasonable expectation that the legal consequences of an account jointly held by them as a married couple is no different than a home owned by them as a married couple.
Over the past fifty years, Florida jurisprudence has continued to struggle with the application of common law real property ownership concepts to modern banking relationships. In that time, consumers have not been provided with informed choices on the signature card with regard to the various forms of legal ownership, which could minimize the necessity for litigation.[13]
*57 As Judge Harris noted, "the Hector court did not intend to set up an obstacle course for married couples to run in order to set up a tenancy by the entireties account." Beal Bank, 710 So.2d at 617 (Harris, J., concurring in part, dissenting in part). Unfortunately, the effect of our decisions not to recognize a presumption in favor of a tenancy by the entireties when a bank account is jointly held by husband and wife was to set up both an obstacle course for litigation and a trap for the unwaryand to contribute to confusion in the law. Recent commentators have observed:
Because most Florida banks do not include TBE language on the depositors' signature card, or fail to recognize the account ownership status entirely, the intent requirement has generated much post-judgment and bankruptcy litigation. The proofs required by various Florida courts are amorphous and inconsistent. Borrowers, lenders, and lower courts are in need of intervention by the Florida Supreme Court or the Florida Legislature so that everyone will more readily discern what accounts may be subject to reach of creditors.
Henry T. Sorenson II & Philip V. Martino, Marital Bank Accounts as Entireties Property: What is the Current State of Florida Law?, Fla. B.J., Apr. 1999, at 60, 60. Indeed, jurists and legal commentators have labeled the law regarding tenancies by the entireties in personal property to be "relatively conflicting and confusing"[14] and "a state of morass."[15] The fact that the Fifth District's review of this case produced three separate opinions from three distinguished jurists resulting in questions certified to this Court lends support to the accuracy of these observations.
Although we understand the considerations that originally led to this Court's decision not to adopt a presumption of a tenancy by the entireties in personal property similar to that in real property, we conclude that stronger policy considerations favor allowing the presumption in favor of a tenancy by the entireties when a married couple jointly owns personal property. In fact, other jurisdictions apply a presumption in favor of a tenancy by the entireties to both real property and personal property.[16] As the *58 authors of a recent article have reasoned: "because of the stringent and conflicting proofs needed by some Florida courts to demonstrate the depositors' intent to create the account, a rebuttable presumption that a marital account is held as [tenancy by the entireties] property in the absence of express language otherwise would conserve judicial resources and solidify the legitimate expectations of borrowers and lenders." Sorenson & Martino, supra, at 62 (footnote omitted).
We agree that the legitimate expectations of the parties regarding an account jointly held by them as a married couple should be no different than a home jointly owned by them as a married couple. The time has come for us to recognize that more confusion and less predictability in the law exists because of our Court's failure to recognize a presumption in favor of a tenancy by the entireties arising from joint ownership of bank accounts by husband and wife. Because this issue involves one arising from this State's common law and because the refusal to extend a presumption to personal property was a product of this Court's jurisprudence, we conclude that it is appropriate for us to recede from our prior case law.[17] As we recently have reiterated:
"[A]ll rules of the common law are designed for application to new conditions and circumstances," and we "exercise a `broad discretion' taking `into account the changes in our social and economic customs and present day conceptions of right and justice.'" Hoffman v. Jones, 280 So.2d 431, 435-36 (Fla.1973) (quoting Duval v. Thomas, 114 So.2d 791, 795 (Fla.1959)). "[C]ontemporary conditions must be met with contemporary standards which are realistic and better calculated to obtain justice among all the parties involved." Id. at 436. Therefore, the common law "`must keep pace with changes in our society,'" and to that end "may be altered when the reason for the rule of law ceases to exist, or when change is demanded by public necessity or required to vindicate fundamental rights."
Stone v. Wall, 734 So.2d 1038, 1043 (Fla. 1999).
Accordingly, we hold that as between the debtor and a third-party creditor (other than the financial institution into which the deposits have been made), if the signature card of the account does not expressly disclaim the tenancy by the entireties form of ownership, a presumption arises that a bank account titled in the names of both spouses is held as a tenancy by the entireties as long as the account is established by husband and wife in accordance with the unities of possession, interest, title, and time and with right of survivorship.[18] The presumption we adopt is a presumption affecting the burden of proof pursuant to section 90.304, Florida Statutes (2000), thus shifting the burden to the creditor to prove by a preponderance of evidence[19] that a tenancy by the entireties *59 was not created. See generally Public Health Trust v. Valcin, 507 So.2d 596, 600 (Fla.1987); Caldwell v. Division of Retirement, 372 So.2d 438, 440 (Fla.1979).[20] We therefore answer the first rephrased certified question in the affirmative and recede from Hector Supply Co., Winters, Bailey, and In re Estate of Lyons, to the extent that these opinions are inconsistent with this opinion.
By our holding, however, we specifically acknowledge that we do not intend to limit the ability of a financial institution to set terms and conditions that authorize withdrawal or transfer of funds by only one owner in a joint account in order to protect both the financial institution and its customers. Further, in setting the terms and conditions of a joint account, the financial institution is not precluded from including account provisions that protect its financial interests as between itself and its customers. As the court explained in In re McCall:
[I]t must be noted that the cards here at issue are standard forms prepared by the bank for its own purposes, the language on the cards containing terms which serve the basic purpose of protecting the bank. Thus, a bank need not necessarily concern itself with the question of ownership of the funds on deposit so long as it is fully protected with respect to withdrawals, the purpose of such a card being not for the purpose of establishing ownership but only to guard against a payment to an unauthorized person.
398 A.2d 1210, 1215 (Del.Ch.1978) (citations omitted). However, the need of financial institutions to fully protect themselves in account transactions with their depositors should not operate to limit access of Florida citizens to all legal forms of account ownership.
Moreover, today's decision in no way limits creditors' ability to protect their interests against debtors who seek to shield assets from creditors.[21] Concerns such as preventing fraud on creditors or fraudulent transfers, however, are more properly addressed by those statutes that prevent fraudulent transfers; for example, the Uniform Fraudulent Transfer Act, found in chapter 726 of the Florida Statutes. See §§ 726.101-.201, Fla. Stat. (2000).[22] In these instances, the standard of proof and burden of proof are those set forth by the applicable case law and statutes. See, e.g., Ming Properties, Inc. v. Stardust Marine S.A., 741 So.2d 554, 556 (Fla. 4th DCA 1999) (holding that under section 726.102(c), the creditor has the initial burden of proving that a tenancy by the entireties property was obtained with fraudulently acquired funds), review denied, 767 So.2d 459 (Fla.2000); Woodell v. TransFlorida *60 Bank, 717 So.2d 108 (Fla. 4th DCA 1998) (explaining that because of the difficulty in proving actual intent to defraud creditors, section 726.105(2) provides that fraudulent intent may be presumed from evidence of "badges of fraud"); Munim v. Azar; 648 So.2d 145, 152 (Fla. 4th DCA 1994) (same).

D. EFFECT OF EXPRESS STATEMENTS AND EXPRESS DISCLAIMERS ON SIGNATURE CARD ON PRESUMPTION
We next address the effect on the presumption of language on the signature card that expressly states that the account is held as a tenancy by the entireties and the effect of language on the signature card that expressly states that it is not held as a tenancy by the entireties. Although we recede from Hector Supply Co., we agree with the statement in Hector Supply Co. that an express designation on the signature card that the account is held as a tenancy by the entireties ends the inquiry as to the form of ownership. Hector Supply Co., 254 So.2d at 781. Following Hector Supply Co., other courts have excluded extrinsic evidence where the account documents clearly indicated the legal form of ownership. See Morse v. Kohl, Metzger, Spotts, P.A., 725 So.2d 436, 437 (Fla. 4th DCA 1999) (holding that extrinsic evidence is inappropriate when both husband and wife signed the signature card, which specifically and clearly designated the account as one held as tenants by the entireties); Sheeler v. United States Bank of Seminole, 283 So.2d 566, 566 (Fla. 4th DCA 1973) (holding no further inquiry necessary where clear from the terms of the bank signature card that an estate by the entireties was expressly created).
In addition, just as a signature card can contain an express statement that a tenancy by the entireties was intended, so too can a signature card contain an express disclaimer that a tenancy by the entireties was not intended. An express disclaimer can take the form of an express statement signed by the depositor that a tenancy by the entireties was not intended, coupled with an express designation of another form of legal ownership. Alternatively, an express disclaimer of an intent not to hold the account as a tenancy by the entireties arises if the financial institution affirmatively provides the depositors with the option on the signature card to select a tenancy by the entireties among other options, and the depositors expressly select another form of ownership option of either a joint tenancy with right of survivorship or a tenancy in common. See Hurlbert v. Shackleton, 560 So.2d 1276, 1279 (Fla. 1st DCA 1990) (holding that where corporate stocks and bonds provided the Shackletons a "menu option of owning them as tenants by the entireties, tenants in common, or joint tenants w.r.o.s," having on each of the bonds elected to own them as "joint tenants w.r.o.s." and "[h]aving clearly chosen one form of interest over the other, there was no need for parol evidence on intent.").
In contrast, a statement on the signature card that the bank account titled in the name of a husband and wife is held as a joint tenancy with right of survivorship does not alone constitute an express disclaimer that the account is not held as a tenancy by the entireties. See Griffin, 632 S.W.2d at 535; cf. Lowry v. Lowry, 541 S.W.2d 128 (Tenn.1976). This is because a tenancy by the entireties is "essentially a joint tenancy, modified by the common-law doctrine that the husband and wife are one person." Hector Supply Co., 254 So.2d at 780.
Thus, if a signature card does not expressly disclaim a tenancy by the entireties form of ownership, a rebuttable presumption arises that a tenancy by the entireties exists provided that all the other unities necessary for a tenancy by the entireties are established. However, if a signature card expressly states that the account is not held as a tenancy by the entireties and another form of legal ownership is expressly designated, no presumption *61 of a tenancy by the entireties arises. Absent evidence of fraud, this express disclaimer would end the inquiry as to whether a tenancy by the entireties was intended. However, if the debtor establishes that the financial institution did not offer a tenancy by the entireties form of account ownership or expressly precluded that form of ownership, then the debtor may prove by other evidence an intent that the debtor and his or her spouse held the account as a tenancy by the entireties. In this circumstance, no presumption arises and the debtor has the burden of establishing a tenancy by the entireties by a preponderance of the evidence. Accordingly, we answer the second rephrased certified question in the negative and the third rephrased question in the affirmative. We thus disapprove of the statement in Medley, 573 So.2d at 900, that because a signature card executed between a depositor and a bank is exclusively for the "protection" of the financial institution and the "convenience" of the parties involved, the signature card does not affect the ownership status of the account, to the extent that statement is inconsistent with our holding.

E. THIS CASE
Having articulated the applicable law to utilize, we now turn to analyze the accounts in this case. As an initial matter, we hold that none of the accounts at issue contained an express disclaimer negating ownership as a tenancy by the entireties. In the Compass Bank accounts, no form of ownership was specified on the signature card and both spouses were listed as account owners. In the case of the South-Trust Bank account, the signature card provided that it was owned as "Almos F. Almand, Jr. or Doris J. Almand, JT TEN" and the signature card contained the form language that the depositors own the account "as joint tenants with right of survivorship, unless another manner of ownership is specifically set forth in connection with the account legal title on this card." To the extent Judge Sharp concluded that the language on the SouthTrust bank account cards expressly disclaimed it was held as a tenancy by the entireties, see Beal Bank, 710 So.2d at 615, we respectfully disagree that a statement that an account is held as a joint tenancy with right of survivorship constitutes an express disclaimer that it is not held as a tenancy by the entireties. As we have explained, a tenancy by the entireties is "essentially a joint tenancy modified by the common-law doctrine that the husband and wife are one person." Hector Supply Co., 254 So.2d at 780. Because there was no express statement of an intent not to hold the accounts as a tenancy by the entireties and no provision of alternative options on the signature card, there was no express disclaimer as to any of the accounts.
In the case of the Barnett Bank account, all the unities necessary for a tenancy by the entireties were established. However, the signature card specified that the account was held as "Almos F. Almand Jr. or Doris J. Almand, Jt. Tenants with Right of Survivorship." This is essentially the same designation as the SouthTrust signature card. In a document separate from the signature card, Barnett Bank attempted through its rules and regulations contained in its Welcome Brochure to preclude its depositors from establishing a tenancy by the entireties. That agreement would be binding as between the depositor and Barnett Bank. See generally Griffin, 632 S.W.2d at 535. However, because the signature card did not contain an express disclaimer that the account was not held as a tenancy by the entireties, the reference in the Welcome Brochure alone would not be sufficient to eliminate the presumption in favor of tenancy by the entireties as between the depositor and a third party creditor.[23]
*62 Accordingly, a presumption arose that the Almands and their spouses held the Compass, SouthTrust and Barnett Bank accounts as tenancies by the entireties. As to the legal status of these accounts, Beal Bank urges that we should find dispositive the fact that the Almands testified that either they or their wives had the ability to withdraw funds from the accounts at their own discretion without the other spouse's approval and for purposes unrelated to the marital unit. Thus, Beal Bank argues the accounts could not be considered tenancy by the entireties accounts because the essential distinguishing characteristic of a tenancy by the entireties is the inalienability of the estate by one spouse. However, as we have explained, the ability of one spouse to make an individual withdrawal from the account does not defeat the unity of possession so long as the account agreement contains a statement giving each spouse permission to act for the other. See Hector Supply Co., 254 So.2d at 781. Thus, we agree with Judge Harris's explanation in his concurring in part, dissenting in part opinion, "the inability of one spouse to unilaterally dispose of the property (money in the account) is not an `element' of the estate, it is the legal consequence of it." Beal Bank, 710 So.2d at 617.
Likewise, we do not find the statement in the Compass Bank signature card for these accounts that "multiple-party accounts" are owned "in proportion to net contributions unless there is clear and convincing evidence of a different intent" to be conclusive of the form of ownership. Although the creditor could use this statement to argue that the depositors did not intend to own the accounts as a tenancies by the entireties, the trial court considered that evidence in this case and concluded to the contrary.
We point out that even without application of the presumption in this case, there was competent substantial evidence in the form of the testimony of the Almands to support the trial court's findings that each of these accounts constituted a tenancy by the entireties as explained by the separate opinion of Judge Harris. See id. Accordingly, the trial court's findings that a tenancy by the entireties existed were in conformity with the holding that we announce today.

IV. CONCLUSION
We have endeavored to shed light on what has been termed a morass in the common law. In receding from Hector, we do so based on the common law of this State that has always recognized presumptions in favor of a tenancy by the entireties in real property owned by a married couple. We hope to bring greater predictability and uniformity to the common law governing accounts held at financial institutions and to eliminate the confusion that has arisen from our prior decisions in this area as exemplified by the Fifth District's splintered decision and its certification to this Court of questions of great public importance.
Although we recognize that we cannot mandate that financial institutions provide affirmative choices to select each form of ownership on the signature cards, with an explanation of each type of ownership, we strongly encourage this practice.[24] Such a *63 practice of affirmative selection would minimize the likelihood of litigation and would put third persons on notice of the manner in which the account is held.
Based on our analysis in this case, we answer questions one and three of the rephrased certified questions in the affirmative and question two in the negative, approve in part and quash in part the per curiam decision of the Fifth District and remand for proceedings consistent with this opinion.
It is so ordered.
SHAW, ANSTEAD, LEWIS and QUINCE, JJ., concur.
WELLS, C.J., dissents with an opinion.
HARDING, J., dissents.
WELLS, C.J., dissenting.
I dissent as to the decision and opinion of the majority. I would affirm the decisions of the district court majorities.
Obviously, this Court's majority opinion is a reversal of the existing law in receding from Hector Supply.[25] I cannot agree with the creation of a presumption which has heretofore not existed and its application to an existing case. I have even more concern about judicially creating a disclaimer and still more about applying that disclaimer to an existing case.
I certainly understand that the various forms of personalty ownership are confusing, and I agree that it would be beneficial to all concerned that there be clarification. However, such clarification is better a legislative task. There are many consequences of such changessome known and, in all probability, many unknown and likely unintended. Contracts and other business arrangements are made on the basis of existing commercial laws, and to suddenly judicially change those laws and place new legal requirements on those contracts and business arrangements appears to me to create a myriad of legal, constitutional, and fairness issues.
NOTES
[1] The Fifth District certified the following questions:

1. IN A CASE IN WHICH THE CREDITOR OF ONE SPOUSE SEEKS TO GARNISH A BANK ACCOUNT HELD BY THAT SPOUSE JOINTLY WITH HIS OR HER SPOUSE, AND THE DOCUMENTS ESTABLISHING THE JOINT ACCOUNT (WITH THE RIGHT OF SURVIVORSHIP AND RIGHT OF ONE PARTY TO THE ACCOUNT TO WITHDRAW FUNDS) DISCLAIM IT IS HELD AS A TENANCY BY THE ENTIRETIES, MAY THE SPOUSE CLAIMING IT IS HELD AS A TENANCY BY THE ENTIRETIES RESORT TO EXTRINSIC EVIDENCE TO PROVE IT WAS INTENDED TO BE HELD AS TENANCY BY THE ENTIRETIES, AND WHAT IS THE PROPER BURDEN OF PROOF WHICH THE SPOUSE MUST CARRY TO PROVE THE ACCOUNT IS HELD AS TENANCY BY THE ENTIRETIES?
2. WOULD THE ANSWER TO THE ABOVE QUESTION BE THE SAME IF THE DOCUMENTS ESTABLISHING THE ACCOUNT MERELY SHOWED IT IS A JOINT ACCOUNT WITH RIGHT OF SURVIVORSHIP AND RIGHT OF ONE PARTY TO THE ACCOUNT TO WITHDRAW FUNDS?
Id. at 617-18.
[2] We do not address the Merrill Lynch account established by Almand III, which was later amended to include the name of his wife as a co-owner. The Fifth District unanimously held that this account was subject to garnishment. See id. at 608.
[3] The Compass Bank documents signed by the depositors are designated as "account agreements." However, we use the term "signature card" for uniformity to indicate the account document that the depositors sign and that sets forth the manner in which the depositors hold the account.
[4] A fifth Compass account was held with business partners in the name of "Jane D. Freedman or Sandra N. Freedman or Amos F. Almand II or Sue C. Almand." We recognize that there is authority for the proposition that where three or more grantees take title, the husband and wife may take title as a tenancy by the entireties to half of the estate. See 12 Fla. Jur.2d Cotenancy and Partition § 24 (1998). However, because the Fifth District did not discuss this issue and the parties do not address the issue in their briefs, we do not address this issue here. Further, there is a sixth Compass Bank account, which was a salary account in the name of Amos F. Almand, III. The parties agree this salary account is protected from garnishment by the homestead protection provided by article 10, section 4 of the Florida Constitution, and the Fifth District unanimously agreed. See Beal Bank, 710 So.2d at 608, 612. Accordingly, we also do not address that account here.
[5] The Almands' wives, Sue C. Almand and Doris Almand, moved as non-parties to dissolve the writs of garnishment, but neither one testified at the hearing. In the trial court, the Almands apparently also raised the issue of whether Doris Almand was a proper party to the garnishment proceeding because they claimed that she was not given proper notice. See Beal Bank, 710 So.2d at 615 (Sharp, J., concurring in result). The Fifth District did not rule on whether Doris Almand was a proper party because, as Judge Sharp noted, the trial court did not address the issue. See id. Although the Almands again have raised this issue in this Court, we likewise decline to address this issue. See Provident Mgmt. Corp. v. City of Treasure Island, 718 So.2d 738, 740 (Fla.1998) (declining to address other issues raised by the parties where the issues were not a basis for our review and were not addressed by the appellate court).
[6] Although the authors of a recent Florida Bar Journal article on this topic suggest that unity of time should be omitted from the list of tenancy by the entireties requirements, see Henry T. Sorenson II & Philip V. Martino, Marital Bank Accounts as Entities Property: What is the Current State of Florida Law?, Fla. B.J., Apr. 1999, at 60, 62, the Almands do not raise the issue of the continued viability of this requirement, and thus we do not discuss it.
[7] The tenancy by the entireties form of ownership dates back to the English common law and to a time when married women could not hold property individually. See Hector Supply Co., 254 So.2d at 779 ("The historic basis for the tenancy was the assumed incapacity of married women to hold property individually."). Historically, therefore, conveyances to a married couple could create no other type of estate than a tenancy by the entireties. See id. Nonetheless, as we acknowledged in Hector Supply Co., "[i]n this century, as well as in the last, successive constitutional and statutory changes have ground this assumption to naught ... [and] with the adoption of Article X, § 5, Florida Constitution of 1968, all distinctions between married men and women have been expressly abolished." Id. at 779-80. Florida's Constitution now expressly protects the equality of women by providing that "all natural persons, female and male alike, are equal before the law." Art. I, § 2, Fla. Const.

Accordingly, if the sole foundation of the tenancy by the entireties doctrine was dependent on the fact that married women could not own property individually, the doctrine would have become obsolete long ago. Instead, however, the tenancy by the entireties as a form of ownership has survived and thrived even in present day:
Whether or not incapacity was the supporting theory behind the tenancy as of 1776, subsequent reconsideration of [the] doctrine has led to development of the view that it ought to be based upon the intention of the parties, rather than upon any assumed incapacity of married women; and further, that concurrently, it ought to be based upon the simple fact that those who were married were to be considered as a unit....
Hector Supply Co., 254 So.2d at 780. Thus, the distinctive feature of a tenancy by the entireties, that husband and wife hold property as an indivisible unit, renders this form of ownership equally wellsuited to the concept of modern-day marriage as a partnership between equals.
[8] The "nonseverability doctrine preserves the entireties status of funds even after one spouse renames an account or transfers money from it without the consent of the other." Sitomer, 660 So.2d at 1114; see also In re Estate of Lyons, 90 So.2d 39, 40 (Fla.1955) (determining whether a bank account was held as a tenancy by the entireties even though the husband had struck the wife's name from the account). Thus, we agree with the opinion of Judge Gross in Sitomer that In re Guardianship of Medley, 573 So.2d 892, 897-99 (Fla. 2d DCA 1990), improperly "equated a joint tenancy with right of survivorship with a tenancy by the entireties by holding that even a joint tenant's interest in funds would continue after they were unilaterally withdrawn and appropriated by the other owner." Sitomer, 660 So.2d at 1114-15.
[9] In addition, in the case of real property, the owners do not need to be described as husband and wife in the deed and their marital relationship does not need to be referred to in the deed in order to establish a tenancy by the entireties. See American Cent. Ins. Co. v. Whitlock, 122 Fla. 363, 165 So. 380, 381 (1936).
[10] Some bankruptcy courts interpreting our state's case law have in fact applied a presumption against the creation of a tenancy by the entireties in personalty. See, e.g., In re Bundy, 235 B.R. 110, 112 (Bankr.M.D.Fla. 1999); In re Howe, 241 B.R. 242, 246 (Bankr. M.D.Fla.1999); In re Planas, No. 98-0506, 1998 WL 757988 at *4 (S.D.Fla. Aug. 21, 1998); In re Blais, 220 B.R. 485, 490-91 (S.D.Fla.1997); In re Campbell, 214 B.R. 411, 414 (Bankr.M.D.Fla.1997); In re Allen, 203 B.R. 786, 791 (Bankr.M.D.Fla.1996); In re Shaland, 133 B.R. 166, 168 (Bankr.S.D.Fla. 1991); In re Spatola, 65 B.R. 49 (Bankr. S.D.Fla.1986); In re Marchini, 45 B.R. 187, 189 (Bankr.S.D.Fla.1984). In direct contrast, certain bankruptcy courts have applied a presumption of a tenancy by the entireties in personal property when the debtor demonstrates "the concurrence of the lapse of a number of years of marriage between the debtor and his or her spouse, the continuous possession of the articles of personal property in question and the testimony by the debtor or the debtor's spouse that, upon the death of the debtor, the personal property in question would not be returned to the original purchaser or donor of the personal property." In re Luna, 100 B.R. 605, 606 (Bankr.S.D.Fla. 1989); see In re Wincorp, Inc., 185 B.R. 914, 918 (Bankr.S.D.Fla.1995).
[11] We note that the Missouri state legislature has adopted specific rules regarding when a bank account held by a husband and wife constitutes a tenancy by the entireties estate. See Mo.Rev.Stat. § 362.470.1, .5 (1997). The Missouri statute states in pertinent part:

When a deposit is made by any person in the name of the depositor and any one or more other persons, whether minor or adult, as joint tenants or in form to be paid to any one or more of them, ... and whether or not the names are stated in the conjunctive or disjunctive or otherwise, the deposit thereupon and any addition thereto made by any of these persons, upon the making thereof, shall become the property of these persons as joint tenants.... The making of a deposit in such form, and the making of additions thereto, in the absence of fraud or undue influence, shall be conclusive evidence in any action or proceeding to which either the bank or trust company or any survivor is a party of the intention of all the parties to the account to vest title to the account and the additions thereto and all interest thereon in the survivor.
§ 362.470.1 (emphasis added). Moreover, section 362.470.5 states:
Any deposit made in the name of two persons or the survivor thereof who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified.
The Missouri Supreme Court has held that compliance with this statute creates a conclusive presumption of a tenancy by the entireties account that may not be defeated by parol evidence indicating a contrary intent to that expressed in the agreement. See In re Estate of LaGarce, 487 S.W.2d 493 (Mo.1972).
[12] See Sorenson & Martino, supra note 6, at 60 (noting that "most Florida banks do not include [tenancy by the entirety] language on the depositors' signature card, or fail to recognize the account ownership status entirely").
[13] In 1979, Judge Jerry Parker, now a judge on the Second District Court of Appeal, wrote an article suggesting that banks provide signature cards expressly designating the form of ownership of the account. See Jerry R. Parker, Garnishment of the Married Couple's Bank Account: A Call for Revised Signature Cards, 53 Fla. B.J. 500, 502 (1979).
[14] Beal Bank, 710 So.2d at 612 (Sharp, J., concurring in result); see Sitomer, 660 So.2d at 1113 (finding that "confusion, which has engendered much litigation, results from the application of real property concepts to bank accounts and the fact that banking practices do not require account holders to expressly delineate the form of ownership they are creating in the jointly held monies"). For other discussions of the confusion in the law, see Carlos A. Rodriguez, Joint Ownership of Bank Accounts in Florida by Husband and Wife: When Does a Spouse's Interest in Account Funds Survive Their Withdrawal by the Other Spouse?, Fla. B.J., Jan. 1997, at 24, 27-29, and Parker, supra note 13, at 501.
[15] In Sitomer, Judge Gross cites Wiggins v. Parson, 446 So.2d 169, 171 (Fla. 5th DCA 1984), for this statement. Sitomer, 660 So.2d at 1113. However, we note that Wiggins was referring specifically to confusion in the case law as to whether the withdrawal of funds from a joint tenancy bank account severed the joint tenancy, transforming it into a tenancy in common. 446 So.2d at 170.
[16] These states hold that a presumption of a tenancy by the entireties arises when a husband and wife hold personal property jointly. See, e.g., Ramsey v. Ramsey, 259 Ark. 16, 531 S.W.2d 28, 30 (1975) (recognizing that acquisition of personal property by husband and wife creates presumption that property is owned as tenancy by the entireties); Widder v. Leeds, 317 A.2d 32, 36 (Del.Ch.1974) (holding that "where a husband and wife sign to borrow finds which are then placed on deposit in their joint names, there is a presumption that they intend to hold as tenants by the entireties."); Morrison v. Potter, 764 A.2d 234, 237 (D.C.2000) ("[t]his jurisdiction essentially employs a presumption that property, including bank accounts, held by a husband and wife as joint tenants is held by the entireties, unless proof of a contrary intent leads to a different result."); In re O'Neal, 409 S.W.2d 85, 91 (Mo.1966) (recognizing presumption that bank accounts jointly owned by husband and wife were held as tenancy by the entireties); Griffin v. Prince, 632 S.W.2d 532, 534-35 (Tenn.1982) (explaining presumption of tenancy by the entireties in personal property jointly owned by husband and wife, but extrinsic evidence may be introduced to prove a contrary intent). But see Traders Travel Int'l, Inc. v. Howser, 69 Haw. 609, 753 P.2d 244, 246 (1988) (recognizing tenancy by the entireties in personal property, but holding that "it must manifestly appear that the spouses intended to create such an estate"); Beacon Milling Co., Inc. v. Larose, 138 Vt. 457, 418 A.2d 32, 33 (1980) (holding that ownership of bank account as tenancy by the entireties may be established based upon evidence of intent).
[17] See, e.g., Gates v. Foley, 247 So.2d 40, 43 (Fla.1971) ("The law is not static. It must keep pace with changes in our society, for the doctrine of stare decisis is not an iron mold which can never be changed.").
[18] The fact that the parties used the conjunction "or" versus the conjunction "and" is not dispositive of the type of account that was created. See Hector Supply Co., 254 So.2d at 781 (finding an account using the conjunction "or" to be consistent with a tenancy by the entireties); Hagerty, 52 So.2d at 434; Norman v. Bank of Hawthorne, 321 So.2d 112, 112 (Fla. 1st DCA 1975).
[19] "Preponderance of the evidence" is the generally accepted burden of proof in civil matters. See Seropian v. Forman, 652 So.2d 490, 494 (Fla. 4th DCA 1995); see also Wieczoreck v. H & H Builders, Inc., 475 So.2d 227, 228 (Fla.1985) (holding that the burden of proof in a fraud action is preponderance or greater weight of the evidence), cited in Passaat, Ltd. v. Bettis, 654 So.2d 980, 981 (Fla. 4th DCA 1995). We find no reason to deviate from that standard here. We disapprove Terrace Bank v. Brady, 598 So.2d 225, 228 (Fla. 2d DCA 1992), to the extent it imposes a higher burden of proof.
[20] Section 90.304 provides that "in civil actions, all rebuttable presumptions which are not defined in s. 90.303 are presumptions affecting the burden of proof." Pursuant to section 90.302(2), a presumption affecting the burden of proof "imposes upon the party against whom it operates the burden of proof concerning the nonexistence of the presumed fact." Thus, when evidence rebutting such a presumption is introduced, the presumption does not automatically disappear. It is not overcome until the trier of fact believes that the presumed fact has been overcome by whatever degree of persuasion is required by the substantive law of the case. See generally Charles W. Erhardt, Florida Evidence, §§ 302.1, 302.2, 303.1, 304.1 (2000 ed.).
[21] Notably, Beal Bank does not assert that in this case there was any intent to defraud creditors in the creation or maintenance of the Almands' joint bank accounts with their wives.
[22] Section 726.105(1)(a), Florida Statutes (2000), prohibits any transfer made with "actual intent to hinder, delay or defraud" any creditor. See also § 726.108, Fla. Stat. (2000) (providing remedies for fraudulent transfers).
[23] Judge Harris, in discounting the statements in the Welcome Brochure explained that the "Barnett account specifically recognized that such provision was only as between the bank and the customer." Beal, 710 So.2d at 616 n. 2. He apparently was referring to the statement in the Welcome Brochure that "Even if the Bank at the Customer's request titles the Customer's account as `Tenants by the Entireties' ... as between the Customer and the Bank, the Bank may treat the account like any other joint account." We agree with Judge Harris's reasoning.
[24] We urge the Legislature to enact such a requirement. For example, section 655.79(1), Florida Statutes (2000), provides that when two people open an account at a financial institution a presumption arises that they intended to create a survivorship account, unless the contract, agreement, or signature card provides otherwise. This presumption can only be overcome by proof of fraud, undue influence, or clear and convincing evidence of a contrary intent. See § 655.79(2); see generally In re Estate of Combee, 601 So.2d 1165, 1166-67 (Fla.1992). For all other personal property, the Florida statutes provide that the doctrine of right of survivorship shall not apply to personal property held by joint tenants "unless the instrument creating the estate shall expressly provide for the right of survivorship." § 689.15, Fla. Stat. (2000).
[25] First Nat'l Bank v. Hector Supply Co., 254 So.2d 777 (Fla.1971).