NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

LORRAINE KOWALSKI,                    )
                                      )
        Appellant,                    )
                                      )
v.                                    )    Case No. 2D17-2873
                                      )
RICHARD ROSENBAUM, as Personal        )
Representative of the Estate of Leon Paul )
Kowalski, Jr., deceased; and STEFANIE )
MEAD,                                 )
                                      )
        Appellees.                    )
_____ )

Opinion filed July 27, 2018.

Appeal from the Circuit Court for Sarasota
County; Don T. Hall, Judge.

Glenn N. Siegel of Glenn N. Siegel, P.A.,
Port Charlotte, for Appellant.

David K. Oakes of David K. Oakes, P.A.,
Punta Gorda, for Appellee Stefanie Mead.

No appearance for remaining Appellee.


MORRIS, Judge.

        Lorraine Kowalski appeals an order confirming a special master's report in

the probate proceedings of her deceased husband's estate.  We affirm the order

confirming the special master's findings and conclusions, but we write to discuss

Kowalski's claim that certain money was not subject to probate because it was held by her and the decedent as tenants by the entireties.

Kowalski and the decedent were still married but had been separated for approximately sixteen years at the time of the decedent's death in 2015. In a will executed prior to his death, the decedent left the majority of his estate to his long-term, live-in girlfriend. Kowalski sought an elective share of the estate. A special master was appointed to determine critical issues, and the special master found, among other things, that Kowalski was in possession of money that belonged to the decedent's estate. Specifically, the special master found that the Kowalskis had received $3,445,066 from the sale of their business real estate in 2006 and that one half of that amount ($1,722,533) belonged to the decedent. He had received $1,008,547 during his life, and the remaining amount of $713,986 was now due to his estate. The special master ordered Kowalski to tender the money to the estate. The trial court confirmed the special master's report.

On appeal, Kowalski argues that the trial court erred in approving the special master's report because the money was held by her and the decedent as tenants by the entireties and was therefore not subject to probate upon the decedent's death. She contends that a presumption of tenancy by the entireties arose regarding the remaining proceeds from the sale of the couple's business real estate and that there was no evidence rebutting that presumption.

"A unique aspect of a tenancy by the entirety is that each spouse is 'seized of the whole or the entirety, and not of a share, moiety, or divisible part.' " Sitomer v. Orlan, 660 So. 2d 1111, 1113 (Fla. 4th DCA 1995) (quoting Bailey v. Smith,

- 2 -

103 So. 833, 834 (Fla. 1925), receded from on other grounds by Beal Bank, SSB v. Almand & Associates, 780 So. 2d 45, 59 (Fla. 2001)).  In other words, "property held by husband and wife as tenants by the entireties belongs to neither spouse individually, but each spouse is seized of the whole."  Beal Bank, SSB, 780 So. 2d at 53.  "The important attribute separating a joint tenancy from a tenancy by the entirety is that in a tenancy by the entirety neither spouse may sever or forfeit any part of the estate without the assent of the other, so as to defeat the right of the survivor."  Sitomer, 660 So. 2d at 1113 (citing cases).

When a married couple holds money in a jointly-titled bank account, a rebuttable presumption arises in favor of a tenancy by the entireties, unless the terms of the account expressly disclaim the tenancy by the entireties form of ownership.  See Beal Bank, SSB, 780 So. 2d at 57.  Here, Kowalski did not offer testimony that the money from the sale was held in an account that was titled in both of their names; in fact, she appears to have conceded that the money was held in accounts titled solely in her name.  Thus, she has not demonstrated that the presumption applies.  But we must still consider whether Kowalski proved that the funds were held by her and the decedent as tenants by the entireties.  See id. at 61 (recognizing that when no presumption arises, a party may still prove a tenancy by the entireties).

There was no dispute that the business property that was sold constituted marital property.  Generally, "[t]he proceeds from the sale . . . of tenancy by the entireties property are also held as a tenancy by the entireties and are owned in total by both the husband and the wife."  Passalino v. Protective Grp. Sec., Inc., 886 So. 2d 295, 297 (Fla. 4th DCA 2004) (citing cases).  However, the character of the proceeds may

change if the parties intended to change the character.  Id.  The question is whether Kowalski and the decedent intended to hold the funds as tenants by the entirety.  "Whether the parties created a tenancy by the entireties in a bank account—whether they were each taking the whole of the account—is a question of fact."  Sitomer, 660 So. 2d at 1115.  A tenancy by the entireties can be terminated by the agreement of the owners, and "[t]he agreement need not be explicit" but "can be inferred from the conduct of the parties."  Passalino, 886 So. 2d at 297.

At the hearing, Kowalski testified that she "hung on [to] those moneys" and that in her mind, she did not "divide that amount, one-half for [the decedent], one-half for" herself.  She also testified that the decedent "did not expect everything to be cut down the middle."  She testified that the decedent did not have control over the money; he would come to her when he needed money.  At the time of his death, the decedent had received a little over $1,000,000.  Kowalski also testified that if the decedent had lived and had continued to ask for money, she would have

> wanted answers and money from him, so it came out equal.
> I would have wanted all of it be figured out as a lump sum.
> Take the proceeds of the sale of the land and the proceeds
> of the sale of the inventory and the equipment and then
> figure out the 50 percent.

She also testified that she began to get concerned after he had asked for amounts reaching a total of $1,000,000.

Based on the testimony given by Kowalski, the special master did not err in finding that she and the decedent did not own the money as tenants by the entireties at the time of his death.  While her initial testimony suggested that she and the decedent were not intending to split the money down the middle, her subsequent

- 4 -

testimony more clearly explained that she believed that each of them owned fifty percent of the funds. Such testimony indicates that the parties were not intending to each own the whole of the money but rather that they each intended to own a divisible part of the money, and it is consistent with the fact that they had separated and were living separate lives. Further, the entireties character of property is terminated when one of the parties maintains sole control and the other party can no longer exercise control over the property. See Passalino, 886 So. 2d at 298. While the decedent had obtained significant funds from Kowalski (over $1,000,000), she exercised sole control over the money. She had not yet disbursed half of the total funds to the decedent, but her testimony indicated that she would not have given him more than half of the total funds, supporting a finding that the parties each owned half of the funds. The trial court did not err in confirming the special master's report directing Kowalski to give the remainder of the decedent's half to the estate. See Jaeger v. Jaeger, 182 So. 3d 697, 700 (Fla. 4th DCA 2015) ("A trial court is bound by a master's factual findings and recommendations unless they are clearly unsupported by the evidence and clearly erroneous." (citing Glaister v. Glaister, 137 So. 3d 513, 516 (Fla. 4th DCA 2014))).

Affirmed.

VILLANTI and ATKINSON, JJ., Concur.