In re Murray GOLUB, Debtor in Possession.

Bankruptcy No. 87–965–BKC–6P1.

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Nov. 16, 1987.

the Debtor was to "transfer" his property to joint ownership. Linda, however, was only obligated to incorporate her possessions with that of the Debtor and no transfer of ownership in the wife's property is indicated by provisions in the Antenuptial Agreement. Additionally, the Antenuptial Agreement provides that in the event of divorce, Linda would get all of her property back while the Debtor's property, now held jointly, would be split with Linda. The provisions of the Antenuptial Agreement were not to become binding until the marriage was actually solemnized, which occurred nine months later on November 27, 1981. The uncontroverted evidence propounded at the hearing in this cause is that the Debtor and Linda Fatizzi intended to create tenancies by the entireties in all property owned by the Debtor. Additionally, the evidence showed that at both the time the Agreement was signed and when the marriage later occurred, the financial reverses which led to the filing of the Chapter 7 petition had not yet occurred.

2. After the marriage but prior to the filing of the petition in this cause, the Debtor and his wife opened a checking account at Freedom Savings & Loan Association. The signature card for the account has a statement of permission authorizing either spouse to act for the other in issuing checks or removing funds from the account. Additionally, a box on the signature card was marked expressly designating the account as a tenancy by the entirety.

3. After the marriage and in accordance with the Antenuptial Agreement, the Debtor caused Squirrel Point, Limited, a general partnership, to assign a 50% interest in a promissory note ("Squirrel Point Assignment") to "Murray M. Golub and Linda Golub, his wife," as joint tenants with right of survivorship.

4. On January 18, 1983, in accordance with the Antenuptial Agreement, the Debtor assigned his interest in the Sunshine Peninsula Profit Sharing Plan ("Profit Sharing Plan") to himself and his wife. The assignment states that the interest in the Profit Sharing Plan "... shall be property that is owned as joint property with a survivorship interest in the whole by myself, Murray M. Golub and my wife, Linda

Frank M. Wolff, Orlando, Fla., for debtor.

Peter N. Hill, Orlando, Fla., for trustee.

## MEMORANDUM OPINION ON TRUSTEES OBJECTION TO EXEMPTIONS

GEORGE L. PROCTOR, Bankruptcy Judge.

This matter comes before the Court on the Trustee's objection to certain exemptions in personal property claimed as exempt by virtue of tenancy by the entireties. Upon consideration of the evidence, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. On February 6, 1981, the Debtor, in contemplation of marriage, entered into an Antenuptial Property Agreement (the "Antenuptial Agreement") with Linda Golub, nee Linda Fatizzi, ("Linda"). At the time of the marriage, Linda had two minor children from a previous marriage, and was nineteen years younger than the debtor. The debtor had no minor children. As a result of these factors, the parties included in the Antenuptial Agreement terms which were favorable to the wife. Specifically,

Golub. The share owned jointly between ourselves shall be undivided and in the event of death each shall own the whole."

5. The Debtor brought into the marriage various household goods, supplies and furnishings ("household items"). The Antenuptial Agreement and the Debtor's testimony at the hearing evidenced that the Debtor and his wife intended to create a tenancy by the entireties in the household items and thought a transfer to entireties property had been effectuated. However, no document evidencing such transfer, other than the Antenuptial Agreement, was ever executed.

6. Subsequently, the Debtor experienced severe financial difficulties and on April 21, 1987 filed the petition in this cause. On Schedule B–4 of the Petition, the Debtor claimed the following as exempt property under Florida law:

| | | |
|---|---|---|
| 14 Acorn Circle, Tavares, Florida 32778 | Art. X Sec. 4 Fla. Const. | $378,000.00 |
| Wearing apparel and watch | Art. X Sec. 4 Fl Const., Ten. by Entireties | 100.00 |
| Loan Receivable from Squirrel Point Homeowner's Association | Ten. by Entireties | 11,394.00 |
| Joint checking account with spouse | Ten. by Entireties | 700.00 |
| Dawn Developers, Inc. (100 shares) | Art. X Sec. 4 Fla. Const. | –0– |
| Sunshine Peninsula Profit Sharing Plan | Ten. by Entir., 11 U.S.C. 541 | 100,000.00 |
| Household goods, supplies & furnishings | Ten. by Entir. | 5,000.00 |

7. The Profit Sharing Plan was claimed as exempt by virtue of tenants by the entireties and "11 U.S.C. 541". The Debtor's reference to 11 U.S.C. § 541 was an apparent inadvertent error and should have been 11 U.S.C. § 522(b)(2)(B).

8. After the filing of the petition, the Trustee timely objected to the exemptions and alleged that the items claimed by the Debtor as exempt by virtue of tenants by the entireties did not satisfy the requirements for tenants by the entireties. The Trustee also objected to the exemption of the Debtors residence and the exemption of the 100 shares of Dawn Developers, Inc. However, at the hearing on the Trustee's Objection, the Trustee withdrew his objection as to the residence and the Debtor withdrew his claim of exemption as to the shares of Dawn Developers, Inc.

## CONCLUSIONS OF LAW

1. Upon commencement of a case under Title 11, United States Code, an estate is created which is comprised of all property in which the Debtor has a legal or equitable interest as of that time. 11 U.S.C. § 541(a). However, an individual debtor may exempt property from his/her bankruptcy estate by claiming exemptions as authorized by Section 522 of the Bankruptcy Code.

2. Section 522 provides that a state may opt out of the federal exemptions and limit a debtor's rights to only those exemptions provided under its state laws. The State of Florida has exercised this option. Section 222.20, Florida Statutes (1977).

3. A person claiming protection under the laws of Florida is entitled to exempt a homestead residence and $1,000.00 worth of personal property. F.S.A. Const. Art. 10, Section 4 (1972).

4. In addition to the state law exemption provided in Section 522(b)(2)(A), Debtor is also entitled under Section 522(b)(2)(B) to exclude from his bankruptcy estate "... any interest in property in which (he) ... had, immediately before the commencement of the case, an interest as a tenant by the entirety ... *to the extent* that such interest as a tenant by the entirety ... is *exempt from process* under applicable non-bankruptcy law." (emphasis added). 11 U.S.C. 522(b)(2)(B). See also *In re Lunger*, 14 B.R. 6 (Bkrtcy., M.D.Fla.1981); *cf. In re Koehler*, 6 B.R. 203 (Bkrtcy, M.D.Fla.1980).

■ 5. Under Florida law, when property is held as tenancy by the entirety, it cannot be reached by a creditor to satisfy the individual debt of one spouse. *In re Blum*, 39 B.R. 897 (Bkrtcy.S.D.Fla.1984). The primary issue in this matter is whether various interests claimed by the Debtor are tenancies by the entireties under Florida law and therefore exempt from the Debtor's estate.

■ 6. First, the Freedom Savings & Loan checking account is entireties property and therefore exempt from the Debtor's estate.

7. In *First National Bank of Leesburg vs. Hector Supply Co.*, 254 So.2d 777 (Fla.

1971), the Florida Supreme Court held that "[s]o long as a bank account contract or signature card is drafted in a manner consistent with the essential unities of the entireties estate, and so long as it contains a statement of permission for one spouse to act for the other, the requirements of form of the estate will have been met." The essential unities of the entireties estate are unity of possession, unity of interest, unity of title, unity of time, and unity of marriage. The court held that an entireties estate would be created if the spouses intended that a tenancy by the entirety should result. The "statement of permission" requirement of *First National Bank of Leesburg, Id.,* was clarified in *Marine Midland Bank–New York v. Arms,* 409 So.2d 215 (Fla 4th D.C.A. 1982). In that case, a husband and wife opened a bank account with the intent to create a tenancy by the entireties. The signature card for the account had a box marked "Joint Account" and the accompanying paragraph to the checked box permitted all funds of the account to be withdrawn by "either one or both or the survivor" of the spouses. *Id.* The court sustained the trial judge's conclusion the parties intended to create a tenancy by the entireties.

8. In the instant case, the bank account was issued in the name of Murray M. or Linda Golub, the signature card bears an express designation that the bank account is a tenancy by the entireties and the signature card also has a statement of permission authorizing either spouse to act for the other in issuing checks. Additionally, the unities of an entireties estate are met and the record clearly shows that the Debtor and his wife intended to create an entireties estate. Additionally, the express designation of tenancy by the entireties on the signature card further evidences that such a tenancy was intended. Thus, the Debtor's exemption of the bank account is valid.

■ 9. Next, the Profit Sharing Plan and the Squirrel Point Assignment satisfy the requirements of entireties property and are properly exempt from the Debtor's estate. In determining whether a tenancy by the entireties is created in personalty, courts look to whether the unities are present and also the intent of the parties to create such an estate. *First National Bank of Leesburg, supra,* at 781. The mere designation of the personalty as being owned jointly with a survivorship interest does not in and of itself negate the conclusion that the personalty is entireties property. *See, Marine Midland Bank, supra.* The unities requirement is satisfied if the unities are all in existence at the time an instrument conveying the property is executed. In the instant case, the unities were all in existence at the time the instruments conveying the property interests were executed. The Squirrel Point Assignment was assigned to Murray Golub and Linda Golub, his wife as joint tenants with right of survivorship and the transfer of the interest in the Profit Sharing Plan is to Murray Golub and his wife Linda Golub to be owned as joint property with a survivorship interest in the whole. In both property interests, the spouses have joint ownership and control, the interests are the same, the interests originate in the same instruments, the interests are commenced simultaneously and the interests recognize the unity of marriage. Thus, the unities of a tenancy by the entireties are established in both the assignment of the loan receivables and in the interest in the profit sharing plan.

10. Since the unities are present, we must next turn to the intent of the parties to see if tenancies by the entireties were in fact created. An intent to create tenancies by the entireties is evidenced by the Antenuptial Agreement and the uncontroverted testimony of the Debtor. The Antenuptial Agreement stated that the husband was to transfer all of his property to joint ownership with his spouse and the Debtor testified at the hearing in this cause that the parties intended to create tenancies by the entireties. No testimony was presented to refute that the parties intended to create entireties estates. Since, the record shows that the parties intended to create an entireties estate and since the unities are present in the instruments creating the estates, a tenancy by the entireties is created in both the the Squirrel Point Assignment and in the Profit Sharing Plan.

■ 11. Finally, no entireties estate was created as to the Household Furnish-

ings. Although the parties apparently intended to create an entireties estate in the Household Furnishings by the Antenuptial Agreement, the unity of marriage was not satisfied at the time the Antenuptial Agreement was signed in that the parties were not yet married. Unlike the Squirrel Point Assignment and the Profit Sharing Plan, no instrument of conveyance was executed for the Household Furnishings. If all of the unities are not in existence simultaneously, a tenancy by the entirety cannot be created. In this instance, though the parties intended, prior to their marriage to hold the husband's property as tenants by the entireties, they did not accomplish their goal in that they failed to execute a conveyance after their marriage to accomplish their intent. Thus, a joint estate rather than an entireties estate was created in the Household Furnishings which the Debtor brought into the marriage.