**In re Kenneth David KOSSOW, Debtor.**

**No. 03–27115–BKC–PGH.**

United States Bankruptcy Court,
S.D. Florida.

April 28, 2005.

**480**

John A. Moffa, P.A., Sunrise, FL, for the trustee.

Patricia A. Redmond, Miami, FL, for the Creditor.

---

### ORDER GRANTING IN PART AND DE-NYING IN PART DEBTOR'S MO-TION FOR SUMMARY JUDGMENT AS TO OBJECTIONS TO CLAIMED EXEMPTIONS

PAUL G. HYMAN, JR., Bankruptcy Judge.

**THIS MATTER** came before the Court upon Kenneth David Kossow's (the "Debtor") Motion for Summary Judgment as to Objections to Claimed Exemptions (the "Motion"), Marika Tolz (the "Trustee") and Snapp Industries, Inc.'s (the "Creditor") Responses to the Motion, the Debtor's Replies thereto, and a Joint Stipulation of Facts. The Court, having considered the Motion, the Responses, the Replies, and the Joint Stipulation of Facts, and being otherwise fully advised in the premises, hereby **GRANTS IN PART AND DENIES IN PART** the Debtor's Motion.

### BACKGROUND

On September 26, 2003, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On March 25, 2004, the Debtor filed a Motion to Convert from a Chapter 7 to a Chapter 13, and on March 26, 2004, the Court entered an Order Granting the Debtor's Motion to Convert. On August 16, 2004, the Debtor filed a Notice of Voluntary Conversion from a Chapter 13 to a Chapter 7, and on August 19, 2004, the Court entered an Order Converting the Debtor's case to a Chapter 7. On August 10, 2004, the Debtor filed Amended Schedules and Statement of Financial Affairs, within which the Debtor claimed his home (the "Real Property") exempt as homestead property, certain personal property exempt as tenancy by the entireties, and his 401(k) Plan exempt under Florida Statute § 222.21. On September 8, 2004, the Trustee filed an Objection to the Debtor's Amended Claimed Exemptions (the "Trustee's Objection"), and on September 9, 2004, the Creditor also filed an Objection to the Debtor's Amended Claimed Exemptions (the "Creditor's Objection").

The Trustee and the Creditor objected to the Debtor's claimed exemption in the Real Property because the Real Property is located within the municipality of Hollywood, Florida and exceeds the limitations for homestead property as set forth in the Florida Constitution, Article X, § IV and Florida Statute §§ 222.01; 222.02; 222.03; 222.05. The Trustee and the Creditor also objected to the personal property claimed exempt as tenancy by the entireties. Finally, the Creditor objected to the Debtor's claimed exemption in his 401(k) Plan, arguing that the 401(k) Plan is subject to a lien granted to the Debtor's mother within

the last two years; thus, constituting a fraudulent transfer.

On October 21, 2004, the Trustee filed a Motion for Approval of Compromise of Controversy (the "Settlement Motion") regarding the Real Property.[1] On November 3, 2004, the Creditor filed an Objection to the Trustee's Settlement Motion, and the matter was set for hearing on November 29, 2004. At the hearing, the Creditor offered to purchase the Trustee's Right, Title, and Interest in the Real Property for $25,000.00. Based upon the Creditor's offer, the Trustee withdrew the Settlement Motion and filed a Notice of Sale of the Bankruptcy Estate's Right, Title, and Interest in the Real Property (the "Sale"). On January 20, 2005, the Trustee conducted the Sale, and the Debtor was the high bidder at the Sale in the total amount of $30,000.00.

On February 15, 2005, the Court entered an Order Granting the Trustee's Motion to Approve the Sale (the "Sale Order"), wherein the Trustee was authorized to convey the Bankruptcy Estate's Right, Title, and Interest in the Real Property. The Sale Order also provided that the consummation of the Sale extinguished any creditor's filed objection to claimed exemptions in the Debtor's Chapter 7 case as to the Real Property, thereby rendering moot the Trustee's and the Creditor's Objections to the claimed exemption in the Real Property. Furthermore, in the Creditor's Response, the Creditor waived its objection to the Debtor's claimed 401(k) Plan exemption. Therefore, the sole issue remaining for the Court to decide is whether the Debtor is entitled to exempt the personal property claimed as tenancy by the entireties.

In the Debtor's Amended Schedule C, the following property is claimed exempt as tenancy by the entireties:

1. Furnishings (bedding, pictures, lamps, other accessories)
2. Furniture
 a. Bedroom # 1 (bed, dresser, night stands, armoire)
 b. Bedroom # 2 (bed, dresser, mirror, night stands, armoire)
 c. Bedroom # 3 (crib, dresser, bookcase, rocking chair)
 d. Office (couch, chair, ottoman)
 e. Dining Room (table, chairs, curios, buffet table, mirror)
 f. Breakfast Nook (table, chairs)
 g. Family Room (entertainment center, couches, end/coffee tables)
 h. Patio (table, chairs, stools, loveseat, end tables, dock box)
3. Grill
4. Kitchen Accessories (cookware, plates, glasses, etc.)
5. Remington & Velozco Statues
6. 2003 Federal Income Tax Refund

The Debtor asserts that the property claimed exempt as tenancy by the entireties was acquired after his marriage on May 28, 2000, with the exception of the patio furniture set and the grill. The Debtor claims that he purchased the patio furniture and the grill in April of 2000. However, the Debtor contends that subsequent to his marriage and pursuant to the prenuptial agreement he assigned his interest in the grill and the patio furniture to himself and his wife as tenants by the entireties on June 6, 2000. Therefore, the Debtor argues that there is no basis in law or fact that should prevent the Court from entering summary judgment denying the

---

**1.** The Settlement Motion was filed on October 21, 2004, but it was not docketed until November 5, 2004.

Trustee's and the Creditor's objections to property claimed exempt as tenancy by the entireties.

In the Trustee's Response, the Trustee failed to address the Debtor's argument regarding the property claimed exempt as tenancy by the entireties. However, in the Trustee's Objection, the Trustee argued that the personal property owned by the Debtor prior to his marriage is not held as tenancy by the entireties. In the Creditor's Response, the Creditor claims that there are material facts in dispute as to what property was purchased after the marriage based upon a 2004 examination of the Debtor that occurred on January 9, 2004. During questioning regarding the Remington statues, the Debtor stated that he believed that he had no documentation that would prove that he purchased the Remington statues after the marriage. The Debtor also testified that he never stated that everything listed in his schedules was acquired after the marriage, but he believed that everything listed as jointly owned and exempt as tenancy by the entireties is appropriately listed and exempted accordingly. The Creditor argues that the Debtor's 2004 examination indicates that an unspecified number of items listed as exempt were not acquired after the marriage.

However, in the Joint Stipulation of Facts, the parties stipulate that the Debtor and his wife purchased the following property after their marriage:

1. Household Furnishings (bedding, pictures, lamps, other accessories)
2. Household Furniture (for bedrooms, office, dining room, breakfast nook, and family room)
3. Kitchen Accessories
4. Remington & Velozco statues

Therefore, based upon the Joint Stipulation of Facts, the Court finds that the only property acquired prior to the marriage was the patio furniture and the grill.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### A. The Summary Judgment Standard

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is appropriate if the Court determines that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). Summary Judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505.

In a motion for summary judgment, the moving party initially bears the burden of

establishing the absence of a genuine issue as to any material fact. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). When a motion for summary judgment is made and supported by the movant, Federal Rule of Civil Procedure 56(e) requires the nonmoving party to set forth specific facts demonstrating that genuine issues of material fact remain for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing a summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts," mere conclusions are not enough to create an issue of material fact. *Id.* at 586, 106 S.Ct. 1348.

In light of the standard for summary judgment, and for the reasons discussed below, the Court finds it appropriate to grant summary judgment in favor of the Debtor as to the personal property acquired before and after the marriage claimed exempt as tenancy by the entireties and deny summary judgment as to the 2003 tax refund claimed exempt as a tenancy by the entireties.

## B. Tenancy by the Entireties in Matters Involving Personal Property

Pursuant to 11 U.S.C. § 522(b)(2)(B), an individual is entitled to exclude from the bankruptcy estate "... any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety ... to the extent that such interest is exempt from process under applicable non-bankruptcy law." 11 U.S.C. § 522(b)(2)(B); *see also In re Colston,* 87 B.R. 193, 194 (Bankr.M.D.Fla.1988).

■ Under Florida law, property held by a husband and wife as tenants by the entireties belongs to neither individual spouse, but to a separate entity referred to as the "unity" or "the marriage." *See In re Stanley,* 122 B.R. 599, 604 (Bankr. M.D.Fla.1990). Therefore, with limited exceptions, entireties property does not become property of the estate when only one spouse has filed a bankruptcy petition. *See Mesa Petroleum Co. v. Coniglio,* 16 B.R. 1015, 1021 (M.D.Fla.1982). Florida state courts recognize that entireties estates can exist in both real and personal property, and federal courts sitting in Florida have followed this position. *Grant v. Peeples (In re Peeples),* 105 B.R. 90, 94 (Bankr.M.D.Fla.1989).

■ Property held as tenancy by the entireties possesses six characteristics: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names). *See, e.g., Beal Bank, SSB v. Almand and Assocs.,* 780 So.2d 45, 52 (Fla.2001); *First Nat'l Bank of Leesburg v. Hector Supply Co.,* 254 So.2d 777, 781 (Fla.1971). Prior to the *Beal Bank* decision, if the matter involved personalty, the debtor had the burden of proving the intent to create an entireties estate. *See In re Bundy,* 235 B.R. 110, 112 (Bankr.M.D.Fla.1999); *In re Stanley,* 122 B.R. at 604. Florida has applied different standards to realty and personalty for a variety of reasons. Realty matters are matters of record which occur infrequently, and which generally involve formal transactions necessarily requiring the consent of both spouses. *Hector Supply Co.,* 254 So.2d at 780. Personalty, on the other hand, is generally not under man-

date of record; it may easily be passed by either spouse without mutual consent or without knowledge of the other spouse; finally, it may change hands with great frequency. *Id.* Another policy justification offered for requiring the debtor to prove an intent to create an entireties estate in personalty is to demonstrate that a tenancy by the entirety estate was not created solely to insulate personal property from the claims of creditors of one of the spouses. *In re Stanley,* 122 B.R. at 604. Furthermore, the debtor's burden of proof as to intent was not met by testimonial assertions by the debtor, or the non-filing spouse. *Id.* Rather, the debtor must provide a quantum of documentary proof establishing that an entireties estate was intended when the personalty was acquired. *Id.*

In *Beal Bank,* the Florida Supreme Court reviewed the decision of the 5th DCA in *Beal Bank, SSB v. Almand and Assocs.,* 710 So.2d 608 (Fla. 5th DCA 1998), certifying two questions as ones of great public importance. *Beal Bank,* 780 So.2d at 48. The central issue was whether bank accounts titled in the name of both spouses were held as tenancies by the entireties and, therefore, not subject to execution by a creditor of only one of the spouses. *Id.* The creditor attempted collection on judgments by garnishing several bank accounts held by the debtors and their wives. *Id.* at 49.

In *Beal Bank,* the Florida Supreme Court observed that once it was decided that no presumption of a tenancy by the entireties existed, there were bound to be difficulties in how to prove intent. *Id.* at 55. The Florida Supreme Court cited Justice Boyd's concurring in part, dissenting in part opinion in *Hector Supply Co.,* where he stated:

> [A contrary rule requiring proof of intent] creates, in effect, a presumption against the creation of estates by the entireties in personalty. This is contrary to the common experience of men [and women] as we know it and will require litigation in almost every instance, where, as is often true, the parties have not expressly provided in writing for a tenancy by the entireties.
>
> . . . .
>
> ... [T]he presumption favoring creation of tenancies by the entireties in personal property ... will generally eliminate the necessity for litigation concerning the intent of the parties.

*Hector Supply Co.,* 254 So.2d at 782–83 (Boyd, J., concurring in part, dissenting in part).

The Florida Supreme Court also recognized that problems in proof of intent are compounded by a lack of uniform documentation to assist the inquiry into what form of tenancy the married couple had intended to establish. *Beal Bank,* 780 So.2d at 55. Finally, the Florida Supreme Court explained that proof of intent is difficult to establish where the characteristics and unities of a joint tenancy with right of survivorship held by a married couple and a tenancy by the entireties estate are identical. *Id.* at 56.

In its consideration of whether to extend the presumption of a tenancy by the entireties to joint bank accounts, the Florida Supreme Court cited Judge Harris's concurring in part, dissenting in part opinion in the 5th DCA *Beal Bank* decision. Judge Harris argued that the *Hector* court did not intend to set up an obstacle course for married couples to run through in order to set up a tenancy by the entireties account. *Beal Bank,* 710 So.2d at 617 (Harris, J., concurring in part, dissenting in part). Unfortunately, the Florida Supreme Court explained, the effect of its decision not to recognize a presumption in favor of a tenancy by the entireties when a

bank account is jointly held by a husband and wife was to set up both an obstacle course for litigation and a trap for the unwary and to contribute to confusion in the law. *Beal Bank*, 780 So.2d at 57. Based upon these observations, the Florida Supreme Court concluded that stronger policy considerations favor allowing the presumption in favor of a tenancy by the entireties when a married couple jointly owns personal property. *Id.* at 57.

The Florida Supreme Court recognized that more confusion and less predictability in the law exists because of the Florida Supreme Court's failure to recognize a presumption in favor of a tenancy by the entireties arising from joint ownership of bank accounts by husband and wife. *Id.* at 58. Therefore, the Florida Supreme Court held that a presumption arises that a bank account titled in the names of both spouses is held as a tenancy by the entireties as long as the account is established by husband and wife in accordance with the unities of possession, interest, title, and time with right of survivorship. *Id.* at 58. This presumption operates to shift the burden to the creditor to prove by a preponderance of evidence that a tenancy by the entireties was not created. *Id.* at 58–59.

Since the *Beal Bank* decision, courts have differed over how far to extend the presumption in favor of a tenancy by the entireties in matters involving personal property. *See In re Daniels*, 309 B.R. 54, 59 (Bankr.M.D.Fla.2004) (concluding that *Beal Bank's* presumption can and should be extended to include all personal property, not just financial accounts); *In re McAnany*, 294 B.R. 406, 408 (Bankr. M.D.Fla.2003) (declining to extend *Beal Bank's* presumption to all personal property, other than joint bank accounts); *Cacciatore v. Fisherman's Wharf Realty Ltd. P'ship*, 821 So.2d 1251, 1253–54 (Fla. 4th DCA 2002) (holding that the presumption of a tenancy by the entireties extends to shares of stock held in certificate form titled in the joint names of spouses).

■ The Court finds that the policy justifications offered by the Florida Supreme Court in *Beal Bank* should be applied to all personalty. As the Florida Supreme Court recognized in *Beal Bank*, married couples often lack documentation establishing an intent to create a tenancy by the entireties in personalty, which is especially true in matters involving household furnishings. As a result, married couples may be forced to "run in an obstacle course of litigation" in order to create a tenancy by the entireties estate in personal property. The Court finds that the failure to extend the presumption of a tenancy by the entireties to personal property acquired in accordance with the unities of an entireties estate would result in unnecessary litigation and confusion. Based on the foregoing, the Court holds that a presumption arises that personal property is held as a tenancy by the entireties as long as the personalty was acquired by husband and wife in accordance with the unities of possession, interest, title, and time with right of survivorship. As stated in *Beal Bank*, this presumption operates to shift the burden to the creditor to prove by a preponderance of evidence that a tenancy by the entireties was not created.

In determining whether the Debtor appropriately claimed the personal property exempt as tenancy by the entireties, the Court finds it appropriate to distinguish between the personal property acquired before and after the Debtor's marriage and the 2003 tax return.

### 1. Personal Property Acquired after Marriage

■ The Debtor claimed his household furnishings and furniture, kitchen accessories, and Remington and Velozco statues

exempt as tenancies by the entireties. The parties have stipulated that this personalty was acquired after the Debtor's marriage. Therefore, the essential unities of the entireties estate have been satisfied. An analysis of intent is not required based upon the Court's decision to extend the presumption of a tenancy by the entireties to personal property acquired in accordance with the unities of an entireties estate. The Creditor and the Trustee failed to introduce any evidence to rebut this presumption. Therefore, the Court finds that the household furnishings and furniture, kitchen accessories, and Remington and Velozco statues are exempt as tenancies by the entireties.

## 2. Patio Furniture and Grill

The Debtor also claimed the patio furniture and the grill exempt as tenancies by the entireties. The Debtor concedes that the patio furniture and the grill were purchased prior to his marriage. However, the Debtor asserts that subsequent to his marriage, he assigned his individual interest in the patio furniture and the grill to himself and his wife as tenants by the entireties, thereby satisfying the essential unities of an entireties estate. In the Trustee's Objection and the Creditor's Objection, each claimed that the property owned by the Debtor prior to his marriage cannot be claimed exempt as tenancy by the entireties property. However, neither the Creditor nor the Trustee has cited any case law supporting their contention.

In support of his argument, the Debtor relies upon the case of *In re Golub,* where the debtor claimed a joint checking account, a promissory note, a profit sharing plan, and household furnishings exempt as tenancies by the entireties. *In re Golub,* 80 B.R. 230, 232 (Bankr.M.D.Fla.1987). The trustee objected to the exemptions, arguing that the requirements for tenancy

by the entireties were not met. *Id.* The bankruptcy court found that the joint checking account, the promissory note, and the profit sharing plan were exempt as tenancies by the entireties, but not the household furnishings. *Id.* at 233. At the time of the *In re Golub* decision, there was no presumption in favor of a tenancy by the entireties in personalty. Consequently, intent is discussed in the Court's analysis of the *In re Golub* opinion.

The joint checking account was opened by the debtor and the non-debtor spouse after the marriage. *Id.* at 231. Therefore, the bankruptcy court found that the requisite unities of an entireties estate were met. *Id.* at 233. Intent was established through the signature card, which contained an express designation that the bank account was held as a tenancy by the entireties and also contained a statement of permission authorizing either spouse to act for the other in issuing checks. *Id.* As a result, the bankruptcy court held that the joint checking account was appropriately claimed exempt as a tenancy by the entireties. *Id.*

Prior to his marriage, the debtor owned an interest in a profit sharing plan, an interest in a promissory note, and various furnishings. *Id.* at 231. In contemplation of marriage, the debtor entered into an antenuptial agreement, which provided that the debtor was to transfer his property to joint ownership. *Id.* The bankruptcy court found that the uncontroverted evidence propounded at the hearing was that the debtor and the non-debtor spouse intended to create tenancies by the entireties in all property owned by the debtor. *Id.* Subsequent to the marriage, the debtor executed two assignments. *Id.* One assigned a fifty percent interest in the promissory note to the debtor and his wife as joint tenants with right of survivorship. *Id.* The other assigned the debtor's inter-

est in the profit sharing plan to the debtor and his wife as joint property with a survivorship interest. *Id.* The bankruptcy court found that all the unities of an entireties estate were in existence at the time the assignments were executed subsequent to the marriage. *Id.* at 233. Furthermore, the debtor's intent to create tenancies by the entireties in the promissory note and the profit sharing plan was evidenced by the antenuptial agreement and the uncontroverted testimony of the debtor at the hearing. *Id.* Therefore, the bankruptcy court held that tenancies by the entireties were created in the promissory note and the profit sharing plan. *Id.*

Finally, the bankruptcy court held that an entireties estate was not created in the household furnishings. *Id.* The bankruptcy court found that the requisite intent was established by the antenuptial agreement. *Id.* at 234. However, the unity of marriage was not present at the time of the antenuptial agreement, which was executed prior to the marriage. *Id.* Furthermore, unlike the profit sharing plan and the promissory note, the debtor never executed an assignment of the household furnishings subsequent to the marriage. *Id.* Consequently, the bankruptcy court held that an entireties estate was not created in the household furnishings because the required unities were not in existence simultaneously. *Id.*

Other jurisdictions have recognized an individual's right to create a tenancy by the entireties in personal property that was individually owned prior to marriage. *See Gayl v. Shader (In the Matter of Shader),* 90 B.R. 85, 87–88 (Bankr.D.Del. 1988) (implying that an entireties estate can be created in artwork purchased by a husband prior to marriage if the husband transfers his individual interest to himself and his wife subsequent to marriage); *In re Wetteroff,* 453 F.2d 544, 546 (8th Cir. 1972) (observing that Missouri recognizes entirety estates in personalty and also allows such an estate to be created by a conveyance from a husband to himself and his wife).

In this case, prior to marriage, the Debtor owned an interest in certain personal property, consisting of a grill and patio furniture. The Debtor's prenuptial agreement allows either the Debtor or his spouse to create a joint ownership from his or her separately owned property. Specifically, paragraph five of the prenuptial agreement provides that:

> Either one of us may also create a joint ownership from his or her separately owned property, but only if the one of us who owns that separate property transfers it (or acknowledges the transfer) by a written instrument signed by that person which expressly states the form of joint ownership. There shall otherwise be an irrefutable presumption that property held in the separate name of one of us is that person's separate property.

Pursuant to paragraph five of the prenuptial agreement, on June 6, 2000, the Debtor executed an assignment of his interest in the patio furniture and the grill, which provides that:

> Ken hereby assigns to Ken and Sherry, as tenants-by-the-entireties, and we both, as joint-owners, hereby accept from Ken, all of Ken's rights, title and interest in and to that certain Viking gas grill and Pompeii patio furniture purchased by Ken for our residence in April 2000, and, with respect to which, Sherry has paid her share of the purchase price.

The assignment of the grill and patio furniture was executed subsequent to the marriage. Therefore, the Court finds that all the unities of an entireties estate were in existence at the time the assignment was executed. Again, an analysis of intent is not required based upon the Court's

488

decision to extend the presumption of a tenancy by the entireties to personal property acquired in accordance with the unities of an entireties estate. The Creditor and the Trustee failed to introduce any evidence to rebut this presumption. As a result, the Court holds that the patio furniture and the grill are exempt as tenancies by the entireties.

### 3. 2003 Federal Income Tax Refund

Finally, the Debtor claims that his 2003 federal income tax refund of $3,670.00 is exempt as a tenancy by the entireties. Both the Trustee and the Creditor filed an Objection; however, neither addressed why the 2003 tax refund is not held as a tenancy by the entireties. In the Trustee's Objection, the Trustee merely asserts that there is no authority that a tax refund qualifies as exempt tenancy by the entireties property.

 The Court recognizes that prior to *Beal Bank*, Florida bankruptcy courts held that the mere fact that a tax refund was derived from a joint tax return did not create a tenancy by the entireties ownership interest under Florida law. *See In re Alden*, 73 B.R. 215, 215 (Bankr.N.D.Fla. 1986); *In the Matter of Crum*, 6 B.R. 138, 139 (Bankr.M.D.Fla.1980). However, the Court concludes that the policy justifications offered by the Florida Supreme Court in *Beal Bank* should be applied to all personal property, including joint tax refunds. Generally, a husband and wife must sign and file a joint tax return. Treas. Reg. § 1.6013–1(a)(2). The effect of a joint filing is that both spouses are jointly and severally liable for any tax liability. I.R.C. § 6013(d)(3). Furthermore, where a joint tax return is filed, any tax refund check is issued in the names of both spouses. Based upon the nature of the joint return, the Court concludes that a joint income tax refund constitutes personal property that satisfies the unities of possession, interest, title, and time with right of survivorship subject to a rebuttable presumption.

 The presumption of a tenancy by the entireties can be rebutted based upon extrinsic evidence such as a prenuptial agreement. Paragraph six of the Debtor's prenuptial agreement provides:

If we elect to file joint tax returns, to split gifts, or make other filings as a married couple, we shall each remain liable only for our separate pro rata share of the tax liability despite the consent to file or act jointly.

However, paragraph seven of the Debtor's prenuptial agreement provides:

Except as we may otherwise agree in writing and as otherwise provided in this Agreement, during our marriage we will share equally the income realized or realizable as a result of, or otherwise attributable to, the main work or activities performed by each of us. We may establish and share one or more joint banking accounts into which we may deposit our marital income to pay for joint household and living expenses . . . .

In paragraph six, the separation of the Debtor's tax liability from his spouse's may demonstrate an intent not to create a tenancy by the entireties in the Debtor's tax returns. Separating the tax liability may also disrupt the unity of interest (the interest in the account must be identical) because both spouses may no longer be jointly and severally liable for any tax liability. However, paragraph seven may be construed as an attempt by the Debtor to share all income realized by either spouse, including joint tax returns. The Court also observes that unlike the household furnishings, the patio furniture, and the grill, where the Debtor specified that the property would be jointly owned as tenants by the entireties, the Debtor never

characterizes his and his wife's interest in the joint tax returns. Based on the foregoing, the Court finds that there are genuine issues of material fact as to whether the 2003 tax refund was intended to be held as tenancy by the entireties property.

### CONCLUSION

For the reasons presented above, the Court holds that a rebuttable presumption arises that all personal property, including a joint tax refund, is held as a tenancy by the entireties as long as the personalty is acquired by husband and wife in accordance with the unities of possession, interest, title, and time with right of survivorship. The Court concludes that the personal property obtained before and after the marriage, excluding the 2003 joint tax return, is exempt as tenancy by the entireties property. Based upon language within the prenuptial agreement, the Court finds that there are genuine issues of material fact as to whether the 2003 tax return was intended to be held as a tenancy by the entireties

### ORDER

The Court, having reviewed the submissions of the parties, the applicable law, and being otherwise fully advised in the premises, hereby:

**ORDERS AND ADJUDGES** that:

1. The Debtor's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

2. The household furnishings, furniture, kitchen accessories, Remington and Velozco statues, grill, and patio furniture are exempt as tenancies by the entireties.

3. There are genuine issues of material fact as to whether the 2003 income tax return is exempt as a tenancy by the entireties.

4. Upon completion of discovery on the 2003 income tax return issues, the parties are instructed to contact the Court's Courtroom Deputy to schedule an evidentiary hearing.