**UNITED STATES of America,**
**Plaintiff,**

v.

**Krishnalalla PERSAUD, a/k/a K.D.N. Persaud, a/k/a Kris Persaud, individually and as trustee; et al., Defendants.**

**No. 6:02–CV–1528ORL22JGG.**

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 18, 2006.

Carol Koehler Ide, Trial Attorney, Tax Division, U.S. Department of Justice,

Washington, D.C., Ralph E. Hopkins, Assistant U.S. Attorney, Orlando, FL, for plaintiff.

Krishnalalla Persaud, Orlando, FL, pro se.

Ashby A. McClanahan, Jr., Law Office Of A. A. McClanahan, Jr., Sanford, FL, William Francis Lawless, Sr., Prabodh Patel, Moyer, Styraus & Patel, P.A., Altamonte Springs, FL, for Krishnalla Persaud, defendant.

James E. McDonough, Jr., Birmingham UK, pro se.

Laura Kristin Sundberg, Akerman Senterfitt-Orlando, Orlando, FL, for Julie's Topsiders Inc., defendant.

Michael A. Paasch, Mateer & Harbert, P.A., Orlando, FL, for Earl K. Wood, defendant.

John Gerald Delancett, Law Offices Of John Delancett, PL, Orlando, FL, for Sabeta Persaud, defendant.

## ORDER

CONWAY, District Judge.

### I. INTRODUCTION

This cause comes before the Court for consideration of Defendant Sabeta Persaud's "Objections to Opposed [sic] Amended Final Judgment of Foreclosure, Amended Decree of Foreclosure and Order of Sale and Notices of Sale of Real Property With Verification" (Doc. 203) and the United States' Response (Doc. 206) thereto.

### II. BACKGROUND AND PROCEDURAL HISTORY

To reiterate in abbreviated form what the Court stated in a prior order, the principal thrust of the United States' initial claims in this case was that Sabeta Persaud's husband, Krishnalalla ("Kris") Persaud, owed back taxes and that he fraudulently conveyed his interests in several real properties to third parties, including Sabeta. In addition to Kris, the United States sued Sabeta, entities alleged to be nominees, and others who might claim an interest in the subject real properties.

Among other things, the Government alleged that Kris had fraudulently conveyed to Sabeta his interest in real property located at 8236 Conroy–Windermere Road ("Parcel I"). Prior to the conveyance, the property had been jointly owned by Kris and Sabeta;[1] following the transaction, the property was titled in Sabeta's name only. The United States sought to set aside that transaction as a fraudulent conveyance.

The United States also sought to set aside a transaction involving property located at 1137 31st Street ("Parcel V"). The Government alleged that Kris and Sabeta fraudulently conveyed the parcel, which had previously been held in both their names, to a third party.

Sabeta was defaulted by the Clerk for failure to respond to the Complaint. See Doc. 28. On December 8, 2003, the United States filed a motion seeking a default judgment against Sabeta. See Doc. 86. Therein, the United States requested entry of a judgment providing that Sabeta had "no enforceable lien upon or interest in the real property subject of this action." Id. On December 17, 2003, the Court granted that motion, stating that it would enter a judgment at the conclusion of this case holding that Sabeta and other defaulted defendants, "do not have enforceable liens upon or interests in the real property subject of this action." Doc. 101 at 3.

---

1. This was once Kris and Sabeta's marital residence. At the time of the October 31, 2005 evidentiary hearing held in this matter, the Persauds were estranged and Kris had moved out.

On July 1, 2005, the Court entered an Order granting the United States' motion for summary judgment against Kris. *See* Doc. 157. That Order required the United States to submit a proposed form of final judgment addressing its claims against all parties in the case. The United States complied with that directive. Accordingly, on August 19, 2005, the Court entered a Final Judgment of Foreclosure (Doc. 165) and a separate Decree of Foreclosure and Order of Sale (Doc. 166). The effect of the final judgment was to completely extinguish any interest Sabeta Persaud had in the real properties subject to suit, including Parcels I and V.

On September 2, 2005, Sabeta filed motions pursuant to Federal Rules of Civil Procedure 59(e), 60(b)(4) and 60(b)(6), seeking relief from the August 19th final judgment. *See* Docs. 172, 176 & 177. She did not seek to "undo" her default status, or to alter the disposition of the properties other than Parcels I and V, or to vacate the Court's determination that the conveyances of Parcels I and V were fraudulent. Rather, she attacked only those portions of the final judgment that completely extinguished her interests in Parcels I and V. Essentially, Sabeta contended that undoing the fraudulent conveyances restored to her an undivided one-half interest in the properties, rather than completely divesting her of her interest in the parcels.[2] However, she conceded that the United States might be able to force a partition and sale of her interest.

On November 8, 2005, following an evidentiary hearing, the Court entered an Order granting Sabeta's post-judgment motions on the basis that it was erroneous to completely divest Sabeta of her inter-

ests in Parcels I and V. *See* Doc. 196. The Court specifically found that the Government had overreached in this case and obtained relief against Sabeta that it was not entitled to. *Id.* The Court directed the United States to submit a proposed judgment and foreclosure papers consistent with the rulings set forth in the Order, and granted Sabeta a window of time to object to such submissions. *Id.*

On November 18, 2005, the United States submitted a proposed Amended Final Judgment of Foreclosure, a proposed Amended Decree of Foreclosure and Order of Sale, and proposed notices of sale. *See* Doc. 200 & attachments. Those documents acknowledged Sabeta's undivided one-half interest in Parcels I and V.

On December 7, 2005, Sabeta filed the instant "Objections to Opposed [sic] Amended Final Judgment of Foreclosure, Amended Decree of Foreclosure and Order of Sale and Notices of Sale of Real Property With Verification" (Doc. 203). The United States filed a Response (Doc. 206) to that document on December 29, 2005.

## III. THE PARTIES' POSITIONS

At the outset, Sabeta again concedes "that the Court does, indeed, have the power to order a sale of the complete interests in the subject property, pursuant to the provisions of [26] U.S.C. § 7403 and the decision of the United States Supreme Court in *U.S. v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983)." Doc. 203 at 2 (parallel case citation omitted). However, she notes that *Rodgers* recognizes that a forced sale is not mandatory, and that a district court enjoys some dis-

---

**2.** Sabeta's challenge was two-fold. First, she argued that it would be inequitable to completely extinguish her interests in the real properties because she never even knew she was a party to this lawsuit. Second, Sabeta asserted that the August 19th judgment was improper (and indeed void) because it exceeded the scope of the relief requested in the Complaint and Amended Complaint, thereby violating Fed.R.Civ.P. 54(c).

cretion in the matter. She maintains that when the factors identified in *Rodgers* are applied to her circumstances, equitable considerations warrant relief from the usual requirement of forced partition and sale as to the two parcels in which she has an undivided one-half interest. She asks the Court to order the sale of all of the other properties first, before compelling the sale of Parcels I and V, asserting that the other properties should be of sufficient worth to satisfy Kris's tax liability.[3] If the sale of the other properties yields a shortfall, Sabeta argues that only then should the Court order the sale of Parcels I and V (with Parcel I being sold last), and that, in any event, only Kris's undivided one-half interest in those two parcels be ordered sold. In other words, Sabeta asks that her interests in the two parcels not be sold at all.

In response, the United States contests the assertion that the properties other than Parcels I and V are valuable enough to satisfy Kris Persaud's indebtedness.[4] To support its position, the Government has filed an affidavit of an IRS official regarding the properties' estimated worth. The United States also opposes Sabeta's request for a ruling that her interests in Parcels I and V not be sold. It maintains that application of the *Rodgers* factors favors a forced sale of Sabeta's interests.

The United States does agree that other parcels should be sold prior to Parcel I, Sabeta's residence. However, the Government notes that Parcel VII is a tract of land adjacent to Parcel I, and maintains that "those two parcels should be marketed at the same time in the event that it would attract buyers who might want to keep them under common ownership and who might pay a premium to do so." Doc. 206 at 5. Accordingly, the Government "believes that it would be appropriate to sell Parcels I and VII at the same time." *Id.* The United States adds that "[i]f it is possible to satisfy the judgment by selling Parcel VII without selling Parcel I, the United States would do so," but it maintains it would be inappropriate at this juncture "to direct that the sale of Parcels I and VII take place at different times." *Id.* The Government suggests that if disagreement on this point remains at the time the properties are to be sold, Sabeta can be called upon to bring the matter to the Court's attention.

The United States also notes that Parcel V is the subject of state condemnation proceedings. Arguing that Sabeta will not be able to keep this parcel in any event, the Government maintains that there is no reason to delay sale of that parcel to the State of Florida.

## IV. ANALYSIS

■ As Sabeta Persaud says, *Rodgers* recognizes that district courts enjoy a limited degree of judicial discretion in determining whether a judicial sale should take place, in order to "take into account both the Government's interest in prompt and certain collection of delinquent taxes and the possibility that innocent third parties will be unduly harmed by that effort." 461 U.S. 677, 709, 103 S.Ct. 2132, 76 L.Ed.2d 236. However, that discretion is not unbridled; it "should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id.* at 711, 103 S.Ct. 2132.

---

**3.** The contention that "the liquidation of these other parcels should satisfy, in total, the tax liabilities of ... Kris Persaud" is made "[u]pon information and belief." Doc. 203 at 3.

**4.** The other properties are known as Parcels II, III, IV and VII.

■ *Rodgers* identifies the following list of non-exhaustive factors bearing on the exercise of such discretion: (1) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes[;]" (2) "whether the third party with a non-liable separate interest in the property would, in the normal course of events (leaving aside § 7403 and eminent domain proceedings, of course), have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors[;]" (3) "the likely prejudice to the third party, both in personal dislocation costs and in ... practical undercompensation[;] [5]" and (4) "the relative character and value of the non-liable and liable interests held in the property[.] [6]" *Id.* at 710–11, 103 S.Ct. 2132.

The first factor—prejudice to the Government—is difficult to assess at this juncture. It is unclear whether the sale of the properties other than Parcels I and V will yield sufficient funds to discharge Kris Persaud's indebtedness. The United States has presented information suggesting that sale of the other parcels will not result in total satisfaction; Sabeta's counsel contends that it may. However, *Rodgers* recognizes that the Government suffers no prejudice "if the taxpayer's indebtedness could be satisfied out of other property to which he had sole and complete title." 461 U.S. at 710 n. 40, 103 S.Ct. 2132.

■ The second factor—the third-party's expectations concerning the prospect of a forced sale—favors Sabeta. Under Florida law,

> property held by husband and wife as tenants by the entireties belongs to neither spouse individually, but each spouse is seized of the whole.... [W]hen property is held as a tenancy by the entireties, only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and therefore it cannot be reached to satisfy the obligation of only one spouse.

*In re Sinnreich,* 391 F.3d 1295, 1297 (11th Cir.2004) (quoting *Beal Bank SSB v. Almand & Assocs.,* 780 So.2d 45, 53 (Fla. 2001)). Moreover, with regard to Parcel I,

---

5. The Supreme Court explained what it meant by undercompensation, in the context of homestead property:

> Although we have held that the Supremacy Clause allows the federal tax collector to convert a non-delinquent spouse's homestead estate into its fair cash value, and that such a conversion satisfies the requirements of due process, we are not blind to the fact that in practical terms financial compensation may not always be a completely adequate substitute for a roof over one's head.... This problem seems particularly acute in the case of a homestead interest. First, the nature of the market for life estates or the market for rental property may be such that the value of a homestead interest, calculated as some fraction of the total value of a home, would be less than the price demanded by the market for a lifetime's interest in an equivalent home. Sec-

ond, any calculation of the cash value of a homestead interest must of necessity be based on actuarial statistics, and will unavoidably undercompensate persons who end up living longer than the average.
461 U.S. at 703–04, 103 S.Ct. 2132 (internal citation and footnote omitted).

6. To illustrate this last factor, the Supreme Court stated:

> [I]f, for example, in the case of real property, the third party has no present possessory interest or fee interest in the property, there may be little reason not to allow the sale; if, on the other hand, the third party not only has a possessory interest or fee interest, but that interest is worth 99% of the value of the property, then there might well be virtually no reason to allow the sale to proceed.
461 U.S. at 711, 103 S.Ct. 2132.

Article X, Section 4(a)(1), of the Florida Constitution protects homestead property from forced sale by creditors. *McKean v. Warburton*, 919 So.2d 341, 343–44 (Fla. 2005), *as revised on denial of rehearing* (Jan. 5, 2006).

The United States argues that Sabeta could not have had any legally-recognized expectation against forced sale because the Supreme Court's decision in *United States v. Craft*, 535 U.S. 274, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002), was issued before this lawsuit was even filed. "*Craft* held that the Internal Revenue Service has the authority to divide tenancy by the entireties property to satisfy the tax obligation of one spouse." *Sinnreich*, 391 F.3d at 1297. The Court rejects this argument. *Rodgers* makes clear that the relevant question is whether the third-party has a legally-recognized expectation of non-sale "in the normal course of events," without regard to § 7403 or eminent domain proceedings. 461 U.S. at 710–11, 103 S.Ct. 2132.

This factor strongly favors Sabeta as to Parcel I. However, regardless of Sabeta's expectations concerning Parcel V, the Court cannot ignore the fact that Sabeta stands to lose this property in any event through the state eminent domain process. Consequently, as to Parcel V. Sabeta's expectations have been overtaken by events.

Sabeta has not bothered to discuss the third factor—likely prejudice to the third party resulting from personal dislocation costs and undercompensation—as to Parcel V. However, she has addressed this factor as to Parcel I. In that regard, Sabeta has verified under oath her counsel's allegation that she "has resided in Parcel I as her personal residence for over 22 years[;]" that "[s]he has paid out of her personal funds for the addition of rooms and improvements to the subject property[;]" that "[s]he currently pays all the homeowner's expenses, including insurance, utilities, maintenance and upkeep, and real estate taxes[;]" that "she has paid more than her one-half interest would require as a joint tenant[;]" and that "three of her daughters reside with her, two of whom are college students[.]" Doc. 203 at 4 & 7. Based on these circumstances, the Court finds that Sabeta would be substantially prejudiced if she were evicted from her home, and that the compensation she would likely receive for her interest in Parcel I would undercompensate her significantly. Accordingly, this factor favors Sabeta.

The final consideration—the relative character of the third party's and the debtor's interests in the property—favors Sabeta as to Parcel I, but not as to Parcel V. As to the latter parcel, Sabeta's interest and her husband's are the same. However, Sabeta is in actual possession of Parcel I. This weighs in her favor as to that parcel.

■ On balance, then, the *Rodgers* factors do not warrant precluding, or even delaying, the sale of Parcel V. The equities do not favor Sabeta significantly as to that property, and Sabeta will lose her interest in that parcel in any event through the eminent domain process. Mindful of its obligation to exercise its discretion "rigorously and sparingly," 461 U.S. at 711, 103 S.Ct. 2132, the Court can reach no other conclusion as to Parcel V.

■ Parcel I stands on a different footing. The equities as they presently appear strongly favor Sabeta concerning this parcel. Yet, the United States has a very high interest in the prompt collection of unpaid taxes. The one unknown variable in the equation is how much money will be gleaned from the sale of the properties other than Parcel I. If those other properties fetch a high enough price to completely satisfy Kris's tax liabilities, resort to Parcel I will be unnecessary. Moreover, even if the sales of the other

properties do not generate enough money to completely extinguish Kris's indebtedness, they may produce sufficient funds to diminish the prejudice to the United States and tip the equitable scales decisively in Sabeta's favor. Balancing the parties' competing interests, the Court concludes that the proper course of action is to postpone a decision concerning the sale of Parcel I until after Parcels II, III, IV and V are sold. *Rodgers* suggests that a temporary postponement of a forced sale may be appropriate in some circumstances. *See* 461 U.S. at 710 n. 39, 103 S.Ct. 2132. (while there are virtually no circumstances in which it is appropriate to refuse to authorize a sale merely to protect the interests of a delinquent taxpayer (as distinguished from the interests of a third party), "[t]his is not to say that a forced sale may not be temporarily postponed ... in order to do justice"). The IRS may also sell Parcel VII separately if it deems fit to do so, or it may await a final determination concerning Parcel I before selling Parcel VII. However, that is a matter committed to the agency's discretion.

### V.  CONCLUSION

The Court will modify the proposed judgment and foreclosure sale documents to reflect the conclusions reached herein.[7] Within thirty (30) days following the latest of the sales of Parcels II, III, IV and V (and Parcel VII, if the IRS deems fit to sell it apart from Parcel I), the United States shall serve and file a report regarding such sales, identifying the proceeds generated therefrom. The IRS shall also include in this report its position concerning whether Parcel I should still be subject to forced sale and, if so, argument supporting its position. Within twenty (20) days

thereafter, Sabeta Persaud shall file and serve a memorandum addressing the matters set forth in the United States' report. Of course, the parties should file a joint submission if they are able to reach agreement in the matter. The Court reserves jurisdiction to consider whether Parcel I will ultimately be subjected to a forced sale, as well as any issues related to that subject.

### AMENDED JUDGMENT
### OF FORECLOSURE

Upon the Court's review of this case, it is

ORDERED, ADJUDGED AND DIRECTED that:

1.  Due and legal service of process has been had upon all Defendants; this Court has jurisdiction of the parties in this cause and its subject matter; the allegations contained in the Amended Complaint have been proved by competent evidence; and the United States is entitled to a foreclosure judgment as a matter of law.

2.  The Defendant Krishnalalla Persaud is indebted to the United States of America for assessed and unpaid Federal income tax liabilities for the taxable years 1982–1989, inclusive, in the total amount of $1,723,543.52 as of July 15, 2005, plus further interest and statutory additions thereon as provided by law. Interest shall accrue daily at the rate provided for by sections 6601, 6621 and 6622 of the Internal Revenue Code (26 U.S.C.) to the date paid in full.

3.  Pursuant to 26 U.S.C. § 6321 the United States has valid Federal tax liens arising out of Krishnalalla Persaud's assessed and unpaid Federal income tax liabilities for these taxable years, upon all property and rights to property belonging

---

**7.**  The Court has made other changes to the United States' proposed documents. Counsel

are urged to read them carefully.

to Krishnalalla Persaud, including the real property subject of this action (the "Subject Property").

4. By Order entered December 17, 2003 (Doc. 101), this Court entered judgment by default against Defendant Sabeta Persaud; Hindu Sanatan Dharma of America, Inc.; American Sevashrama Sangha of Florida, Inc.; Chester Zalewski; James E. McDonough, Jr., Successor in Interest to Clarence M. Hoenstine II; Southpac Properties; Devi Trust; North American Mortgage Company, Successor in Interest to the Dime Savings Bank of New York, FSB; Luis Campoy; Ana Maria Callejas; Robert K. Burrow; and C.B. Agrawal. The above named defendants do not have enforceable liens upon or interests in the Subject Property except that Sabeta Persaud has an undivided one-half interest in each of what is described herein as Parcels I and V.

5. By that same Order this Court dismissed Defendants Jerry Sirmans and Gene Sirmans. The above named defendants do not have enforceable liens upon or interests in the Subject Property.

6. By Stipulation entered May 17, 2005 (Doc. 156), the United States and Defendant Julie's Topsiders, Inc., t/a Julie's Waterfront Restaurant, agreed that Julie's Topsiders as tenant, and Defendant Krishnalalla Persaud under the name of A.S.S. of Florida, Inc. (also known as American Sevashrama Sangha of Florida, Inc.), entered into a lease agreement for the non-residential real property located at 4201 South Orange Avenue, Orlando, Florida (Parcel II); and that any foreclosure judgment or sale of the real property shall be subject to and shall not alter or affect Julie's Topsiders' rights pursuant to the lease. (A copy of the Commercial Lease is attached to the Stipulation.) The parties did not stipulate to the extent of any such rights, or whether the lease remains valid and enforceable. In its Objection (Doc.

159), Julie's Topsiders presented evidence of a valid and enforceable lease in the Subject Property. The lease expires on July 31, 2006, or earlier as provided in the lease. The lease grants Julie's Topsiders options to renew the lease for two (2) additional five-year terms. In accordance with the Stipulation between the Government and Julie's Topsiders, any foreclosure sale of the Orange Avenue property will be made subject to the lease. Until sale of the Orange Avenue property and assumption of the lease, monthly rent payments due from Julie's Topsiders shall be collected and delivered to the Clerk of this Court for deposit into the registry of this Court and for eventual distribution in accordance with further order of this Court.

7. Defendant Earl K. Wood, Orange County Tax Collector, has valid and enforceable liens for ad valorem real property taxes against each of the real properties subject of this action, and said liens have priority over the Federal tax liens in accordance with 26 U.S.C. § 6323(b)(6).

8. Pursuant to 26 U.S.C. § 6321, the United States has valid Federal tax liens arising out of the assessed and unpaid Federal income tax liabilities of Defendant Krishnalalla Persaud for taxable years 1982, 1983, 1984, 1985, 1986, 1987, 1988 and 1989, upon all property and rights to property belonging to Krishnalalla Persaud, including the real property subject of this action, all the improvements, buildings, fixtures and appurtenances thereon and thereunto pertaining, and all rental proceeds therefrom. The Federal tax liens specifically attach to the following described real property, for the reasons set forth herein:

(a) Parcel I—Real property located at *8236 Conroy–Windermere Road, Orlando, Florida:*

Lots 3, 4, 5, 20, 21, 22 and the West 5.67 feet of Lots 2 and 23, Block A and North

Half of abandoned Carolina Drive lying South of Lots 20, 21, 22 and West 5.67 feet of Lot 23, Block A of WINDERMERE HEIGHTS, according to the Plat thereof as recorded in Plat Book K, Page 125 of the Public Records of Orange County, Florida. SUBJECT to that certain Mortgage to FORD CONSUMER CREDIT COMPANY, dated March 26, 1984, recorded in Official Records Book 3488, Page 2016 of the Public Records of Orange County, Florida, the unpaid balance of said Mortgage the Grantees herein, hereby assume and agree to pay.

Krishnalalla Persaud and Sabeta Persaud fraudulently conveyed this property to Sabeta Persaud, for inadequate or no consideration. Krishnalalla Persaud and Sabeta Persaud purportedly executed a mortgage to Chester Zalewski upon a portion of the real property. The purported conveyance and mortgage are hereby set aside. The property is held jointly by Krishnalalla Persaud and Sabeta Persaud, each having an undivided one-half interest, and is encumbered only by the Federal tax liens against Krishnalalla Persaud and ad valorem real property tax liens. This property may not be sold, or advertised for sale, until further order of Court.

(b) Parcel II—Real property located at *4201 South Orange Avenue, Orlando, Florida:*

PARCEL NO. 1: From the Southwest corner of Section 12, Township 23 South, Range 29 East, Orange County, Florida, run North 00 degrees 22 minutes 10 seconds East 10.06 chains along the West boundary of said Section 12; thence South 89 degrees 22 minutes 20 seconds East 5 chains; thence North 00 degrees 22 minutes 10 seconds East 188.65 feet along a line 330 feet East of and parallel with the said West boundary of Section 12 for the Point of Beginning; run thence North 73 degrees 47 minutes 20 seconds East 93.80 feet; thence North 22 degrees 30 minutes East 486 feet, more or less, to a point on the North boundary of the Southwest Quarter of the Southwest Quarter of said Section 12; thence Westerly 473 feet, more or less, along said North boundary to a point on the existing Easterly right of way line of State Road 527 (Orange Avenue), said right of way line being on the arc of a curve concave Northeasterly, having a radius of 2252.01 feet; run thence Southeasterly 47 feet, more or less, along the arc of said curve to the end of said curve; run thence South 15 degrees 46 minutes 57 seconds East 465.45 feet along said Easterly right of way line to a point South 73 degrees 47 minutes 20 seconds West of the Point of Beginning; run thence North 73 degrees 47 minutes 20 seconds East 60.74 feet to the Point of Beginning. LESS all that part within right of way of State Road 527.

PARCEL NO. 2: That part of the West Half of the Southwest Quarter of Section 12, Township 23 South, Range 29 East, Orange County, Florida, described as follows: Commence on the South line of Section 12, Township 23 South, Range 29 East at a point 470.63 feet North 89 degrees 33 minutes 13 seconds East of the Southwest corner of said Section 12; thence run North 16 degrees 14 minutes 47 seconds West a distance of 830.54 feet; thence run North 73 degrees 45 minutes 13 seconds East a distance of 45 feet for the Point of Beginning; thence continue North 73 degrees 45 minutes 13 seconds East a distance of 58.37 feet to a point on a curve concave to the Southwesterly and having a radius of 849.02 feet and a chord bearing of North 25 degrees 46 minutes 09 seconds West; thence run Northwesterly along the arc of said curve through a central angle of 15 degrees 13 minutes 16 seconds a dis-

tance of 225.42 feet; thence run North 33 degrees 22 minutes 47 seconds West a distance of 71.84 feet; thence run South 16 degrees 14 minutes 47 seconds East a distance of 290.44 feet to the Point of Beginning. LESS that part of the West Half of the Southwest Quarter of Section 12, Township 23 South, Range 29 East, Orange County, Florida, described as follows: Commence on the South line of Section 12, Township 23 South, Range 29 East, Orange County, Florida, at a point 470.63 feet North 89 degrees 33 minutes 13 seconds East of the Southwest corner of said Section 12; thence run North 16 degrees 14 minutes 47 seconds West a distance of 1137.20 feet; thence run North 73 degrees 45 minutes 13 seconds East a distance of 40 feet for the Point of Beginning; thence run South 33 degrees 22 minutes 47 seconds East a distance of 16.97 feet; thence run North 16 degrees 14 minutes 47 seconds West a distance of 112.61 feet; thence run North 73 degrees 45 minutes 13 seconds East a distance of 45 feet; thence run North 16 degrees 14 minutes 47 seconds West a distance of 52.03 feet to the beginning of a curve concave to the Easterly and having a radius of 2202.01 feet, and a chord bearing of North 15 degrees 33 minutes 29 seconds West; thence run Northwesterly along the arc of said curve through a central angle of 01 degrees 22 minutes 37 seconds a distance of 52.91 feet to the end of said curve; thence run South 88 degrees 34 minutes 39 seconds West a distance of 51.38 feet to the beginning of a curve concave to the Westerly and having a radius of 2252.01 feet and a chord bearing of South 15 degrees 24 minutes 21 seconds East; thence run Southeasterly along the arc of said curve through a central angle of 01 degrees 40 minutes 51 seconds a distance of 66.06 feet to the end of said curve; thence run South 16 degrees 14 minutes 47 seconds East a distance of 10.03 feet; thence run North 73 degrees 45 minutes 13 seconds East a distance of 40 feet; thence run South 16 degrees 14 minutes 47 seconds East a distance of 22 feet; thence run South 73 degrees 45 minutes 13 seconds West a distance of 40 feet; thence run South 16 degrees 14 minutes 47 seconds East a distance of 116.39 feet to the Point of Beginning.

Krishnalalla Persaud fraudulently conveyed this property to himself and Sabeta Persaud. Krishnalalla Persaud purportedly executed a mortgage to Clarence M. Hoenstine II upon the real property, which mortgage was assigned to James E. McDonough, Jr. Krishnalalla Persaud purportedly executed a mortgage to SouthPac Properties upon the real property. Krishnalalla Persaud and Sabeta Persaud executed a fraudulent mortgage to Devi Trust upon the real property. The purported conveyances and mortgages are hereby set aside. Because neither Sabeta Persaud, Clarence M. Hoenstine II, James E. McDonough, Jr., or Devi Trust has any enforceable lien upon or interest in the real property, the property is held solely by Krishnalalla Persaud and is encumbered only by the Federal tax liens against Krishnalalla Persaud and ad valorem real property tax liens. The United States shall foreclose its liens against this property.

(c) Parcel III—Real property located at *4474 Cleveland Avenue, Orlando, Florida:*

The South 8.78 feet of Lots 1, 2, 3, 4 and all of Lots 19, 20, 21, 22, 23 and 24, Block D, WINDERMERE HEIGHTS, FIRST SECTION, according to the plat thereof, as recorded in Plat Book K, Page 125 of the Public Records of Orange County, Florida.

The record owner of this property, Hindu Sanatan Dharma of America, Inc., fraudulently conveyed to American Sevashrama Sangha of Florida, Inc., an interest in this real property, for inadequate or no consideration. Hindu Sanatan Dharma of America, Inc., is the nominee of Krishnalalla Persaud, who is the true beneficial owner of the real property. American Sevashrama Sangha of Florida, Inc., is the nominee of Krishnalalla Persaud, who is the true beneficial owner of the real property. This property is held solely by Krishnalalla Persaud and is encumbered only by the Federal tax liens against Krishnalalla Persaud and ad valorem real property tax liens. The United States shall foreclose its liens against this property.

(d) Parcel IV—Real property located at *1200 32nd Street, Orlando, Florida:*

LOTS 1 AND 2, BLOCK 82, PLAT OF ANGEBILT ADDITION NO. 2, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK J, PAGE 124, PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA.

The record owner of this property, Hindu Sanatan Dharma of America, Inc., through its president, Krishnalalla Persaud, purportedly executed a mortgage to Robert K. Burrow upon this real property. Robert K. Burrow has no enforceable lien upon or interest in this real property. Hindu Sanatan Dharma of America, Inc., is the nominee of Krishnalalla Persaud, who is the true beneficial owner of this real property. This property is held solely by Krishnalalla Persaud and is encumbered only by the Federal tax liens against Krishnalalla Persaud and ad valorem real property tax liens. The United States shall foreclose its liens against this property.

(e) Parcel V—Real property located at *1137 31st Street, Orlando, Florida:*

Lot 16, Block 77, ANGEBILT ADDITION, NUMBER 2, according to the Plat thereof as recorded in Plat Book J, Page 124, of the Public Records of Orange County, Florida. Subject to that certain Mortgage to Marion Louise Green, dated January 10, 1984, recorded in O.R. Book 3463, Page 1867, Public Records of Orange County, Florida; the unpaid balance of said Mortgage the Grantees herein, hereby assume and agree to pay.

Krishnalalla Persaud and Sabeta Persaud fraudulently conveyed this property to Hindu Sanatan Dharma of America, Inc., for no or inadequate consideration. Defendant Hindu Sanatan Dharma of America, Inc., is the nominee of Krishnalalla Persaud, who is the true beneficial owner of this real property. The property is held jointly by Krishnalalla Persaud and Sabeta Persaud, each having an undivided one-half interest, and is encumbered only by the Federal tax liens against Krishnalalla Persaud and ad valorem real property tax liens. The United States shall foreclose its liens against this property.

(f) Parcel VII—Real property located at *8230 Conroy–Windermere Road, Orlando, Florida:*

Orange County Parcel Number 15–23–28–9340–01–010, and further described as Lots 1 and 24 and the East 44.53 feet of Lots 2 and 23, Block A, and the North 1/2 of Vacated Carolina Drive, lying south of said lots, WINDERMERE HEIGHTS, according to the plat thereof as recorded in Plat Book K, Page 125 of the Public Records of Orange County, Florida, less the South 30 feet of even width of the North 35.00 feet of above said description.

The owner of record, Sabeta Persaud, is the nominee of Krishnalalla Persaud, who is the true beneficial owner of this real property. This property is held solely by Krishnalalla Persaud and is encumbered only by the Federal tax liens against Krishnalalla Persaud and ad valorem real property tax liens. The United States shall foreclose its liens against this property.

9. The United States of America is entitled to the entry of a foreclosure judgment against the Subject Property, with the exception of Parcel I, which may not be sold, or offered for sale, until further of Court.

10. Except as to Sabeta Persaud's undivided one-half interest in Parcel I, the potential foreclosure of which remains to be adjudicated, the liens of the county tax collector and of the United States of America are prior, paramount and superior to all rights, claims, liens, trusts, encumbrances and equities of the defendants and all persons, firms or corporations claiming by, through or under the defendants in or to the Subject Property, and the Subject Property, except Parcel I, shall be sold free and clear of any claims of the defendants or any third party claiming through such Defendants or any interests acquired since the date of the lis pendens filed in this case, except as otherwise provided herein.

11. The Internal Revenue Service Property Appraisal and Liquidation Specialists (PALS) shall, after publication of notice as required by this Court's Decree of Foreclosure and Order of Sale entered in this case, sell the Subject Property as described above, except Parcel I, to the highest and best bidder for cash, at public sale, at the date, time and place within Orange County, Florida, to be determined by PALS, free and clear and discharged of any and all claims, liens, encumbrances, rights, equities and interest of the defendants and all persons, firms or corporations claiming by, through or under the defendants or any interests acquired since the date of the lis pendens filed in this action except as otherwise provided herein. The sale is to be held at a date, time and place within Orange County, Florida, to be announced by PALS by advertising a Notice of Sale of Real Property substantially in the form of the Notice attached to the Decree of Foreclosure and Order of Sale after the sale has been advertised once each week for four consecutive weeks preceding the date fixed for the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States where the Subject Property is situated, and by any other notice PALS may in its discretion deem appropriate. The notice shall contain a description of the realty and shall contain the terms and conditions of sale as set forth in this Order.

12. A successful third-party bidder at the sale shall pay, in addition to the amount of the bid, any documentary stamps and Clerk's registry fees as provided by law. Upon the sale being held in accordance with the Decree of Foreclosure and Order of Sale, completion of the sale, filing of a motion for confirmation of sale, and after the passage of ten (10) days without objections to the sale having been filed with the Court, the defendants and all persons claiming by, through or under them or any interests acquired since the filing of the lis pendens in this action shall be forever barred and foreclosed of any equity or right of redemption in and to the Subject Property, and the purchaser at the sale or the purchasers, their heirs, representatives, successors or assigns without delay shall be let into possession of the premises so conveyed.

13. Each parcel of the Subject Property, except Parcel I, may be sold individual-

ly or in combination, in the discretion of the United States and PALS.

14. The Court retains jurisdiction over this cause for purpose of entering all further orders as may be appropriate, including without limitation, orders authorizing sale of the Subject Property at private sale and orders regarding the disbursement of funds held in the registry of this Court. The Court also specifically reserved jurisdiction to determine whether, following the sale of the other Subject Properties, Parcel I may be subject to forced sale.